UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL MCGRATH, et al.,

    Plaintiffs,

    v.                                      Case No. 3:20-CV-656 JD

DUNECREST CONDOMINIUM
ASSOCIATION,

    Defendant.

## OPINION AND ORDER

Plaintiffs Michael McGrath, Jill McGrath, Tim McGrath, Martin McGrath, Colin McGrath, and C.M. ("the McGraths") filed a complaint against Defendant Dunecrest Condominium Association, alleging disability discrimination under the Fair Housing Act and violations of the Indiana Condominium Act. Two motions are before the Court: the Association's Motion to Dismiss the McGraths' amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (DE 17); and the McGraths' motion for leave to file a second amended complaint (DE 24). For the reasons stated below, the Court grants in part the McGraths' motion for leave to amend, rendering the Association's motion to dismiss moot.

### A. Procedural Background

The McGraths allege that Dunecrest Condominium Association violated the Fair Housing Act by discriminating against the family's two disabled members when the Association denied the family permission to construct a second way in and out of their condominium. In addition, the McGraths allege that the Association's conduct leading up to and throughout the approval process violated the Indiana Condominium Act, which regulates governance disputes between condominium owners.

Though this case is in its early stages, there have already been a few twists and turns. First, the McGraths filed an initial complaint and shortly thereafter amended it to redact the name of their youngest child, a minor. (DE 9). Next, the Association moved to dismiss the first amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (DE 17.) Rather than responding directly to the motion to dismiss, the McGraths stated that they "prefer to simply amend the Complaint to address the arguments made in Defendant's motion to dismiss." (DE 24 ¶5.) However, the McGraths failed to attach or describe the proposed amended complaint to their motion for leave to amend. Only after the Association filed a response noting this failure (DE 25) did the McGraths file a reply and attach the proposed second amended complaint. (DE 26-1.) The Court granted the Association leave to file a sur-reply to address the proposed amended complaint. (DE 27.) In the sur-reply, the Association asserts that the McGraths' proposed amended complaint is futile and asks the Court to deny leave to amend and dismiss the McGraths' pending claims. (DE 28.)

If the motion for leave to file a second amended complaint is granted, the second amended complaint would supersede the first one. In turn, the Association's motion to dismiss would become moot. Therefore, the Court considers the McGraths' motion for leave first. Here, the Court notes that the McGraths' attorneys have not submitted any substantive argument in support of their motion nor have they responded to the Association's brief in opposition; rather, they seem to believe that filing the proposed second amended complaint is enough. By doing so, they ignore the fact that ours is an adversarial, not an inquisitorial, legal system, and going forward such omissions should not recur.

B. **Allegations in the Proposed Amended Complaint**

The proposed amended complaint sets out the following allegations: The plaintiffs in this case are Michael and Jill McGrath; three of their adult children, Tim, Martin, and Colin; and one minor child, C.M. At the center of the Fair Housing Act claim are twenty-five-year-old twins Tim and Martin, who were diagnosed as autistic at thirty-six months. (DE 26-1 ¶7.) Both twins have significant deficits and struggle with emergencies, unexpected circumstances, and changes to daily routine. (DE 26-1 ¶7.) Martin, whose autism is more severe than Tim's, also faces communication challenges, including limited speech and verbal understanding. (DE 26-1 ¶8.)

While the McGraths primarily live in Cook County, Illinois, they also own a condominium in Michigan City, Indiana. As owners of this property near the sand dunes of Lake Michigan, Michael and Jill McGrath are part of the Dunecrest Condominium Association. (DE 26-1 ¶19.) The matter presently before the Court arises out of the McGraths' desire to construct a second exit from their condominium and the Association's response to this request.

In its current condition, the McGraths' second-floor condominium is only accessible through the building's main entrance via a common area and a staircase. (DE 26-1 ¶22.) For the last several years, the McGraths have sought to build a deck extension and staircase leading down from the small balcony off their living room. (DE 26-1 ¶40.) With this goal in mind, the McGraths solicited construction bids and presented their plans to the Association in 2018. (DE 26-1 ¶41.)

On July 21, 2018, the Association convened for a special meeting to vote on the McGraths' plans. (DE 26-1 ¶45–46.) During the meeting, the McGraths experienced hostility from other members of the Association. (DE 26-1 ¶47–48.) They characterize this hostility as discrimination based on Tim's and Martin's disabilities. (DE 26-1 ¶50.) Instead of approving the

construction plans in their original form, the other Association members asked the McGraths to make modifications, reducing the size of the deck extension and adding a new security system. (DE 26-1 ¶48.) The family agreed and, ultimately, the modified plans passed in a 5-3 vote. (DE 26-1 ¶49.) However, after the meeting, there was confusion regarding the validity of certain votes, as one member attempted to rescind her vote via email following the meeting and another person's authority to vote on behalf of her mother has since been called into question. (DE 26-1 ¶51, 53.)

To secure the building permit required to construct a second exit, the McGraths need approval paperwork from the Association. (DE 26-1 ¶54.) Despite the initial vote in favor of the plans, the Association never issued the paperwork. The McGraths assert that the Association's failure to issue the requisite approval paperwork constitutes disability discrimination under the FHA. (DE 26-1 ¶55.)

### C. The McGrath's Motion for Leave to Amend

Requests for leave to amend are governed by Federal Rule of Civil Procedure 15(a)(2), which states that "a party may amend its pleading only with the opposing party's written consent or the court's leave and the court should freely give leave when justice so requires." *See also Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011). However, "a district court may deny leave to amend on the grounds of undue delay, bad faith, dilatory motive, undue prejudice, or futility." *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 801 (7th Cir. 2004); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). An amendment may be futile "when it fails to state a valid theory of liability or could not withstand a motion to dismiss." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (internal citations omitted). The court has

discretion to determine whether a plaintiff has properly requested leave to amend. *Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993).

The McGraths assert that the proposed "Second Amended Complaint" "has cured the alleged defects contained in Defendant's motion to dismiss." (DE 26 at 7.) The Association responds that the proposed second amended complaint would be futile because it fails to state a claim under the Fair Housing Act and does not confer subject matter jurisdiction upon the Court over its state law allegations.

**(1) Subject Matter Jurisdiction**

*(a) FHA Claims*

Rule 12(b)(1) authorizes dismissal of claims over which the Court lacks subject matter jurisdiction. When considering a 12(b)(1) motion, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) (citations omitted). The burden of establishing proper federal subject matter jurisdiction rests on the party asserting it: here, the McGraths. *See Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).

The Association characterizes its failure to provide paperwork as an internal governance dispute, governed by the Indiana Condominium Act rather than the FHA and thus outside this Court's jurisdiction. (DE 18 at 9.) The Association states that "this matter… has nothing to do with the Fair Housing Act." (DE 18 at 1.) However, the Association's position does not acknowledge the breadth of the FHA's reach. Matters of condominium association governance are no less subject to the FHA's nondiscrimination demands than other forms of housing provision. Courts consistently recognize FHA claims against condominium associations, both at

the initial purchasing stage and in the ongoing provision of services. *See, e.g. Selyutin v. Bd. of Dirs. of the Skokie Gardens Condo. Ass'n*, 818 Fed. App'x. 535 (7th Cir. 2020) (recent case in which the 7th Circuit heard FHA claims against a condominium association); *Geraci v. Union Square Condo. Ass'n*, 891 F.3d 274 (7th Cir. 2018) (same); *Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009) (same). All of these cases involved matters that could be characterized as "governance disputes" and were properly brought under the FHA. As provided in 28 U.S.C. §1331, this Court has subject matter jurisdiction over cases involving federal questions including the FHA claims presented here.

(b) *Pendant State Law Claims*

In addition to their federal claims under the FHA, the McGraths assert several violations of the Indiana Condominium Act. Ind. Code § 32-25. The Indiana Condominium Act governs the structure, sales, and internal governance matters of condominium associations, requiring, among other things, adherence to association bylaws. Ind. Code § 32-25-8, 9. The McGraths detail violations of the Association bylaws that allegedly affected the outcome of the vote regarding their proposed construction project. (DE 26-1 ¶76–103.) In response, the Association asserts that the McGraths failed to exhaust the grievance process mandated by the Indiana Condominium Act, and thus that the McGraths' claims are not ripe. (DE 18 at 8–9.) The Indiana statute requires that prior to bringing a claim, a complainant must provide notice to the condominium association of the nature of their claim. Ind. Code § 32-25-8.5-11. The McGraths reply that they have fulfilled the grievance process requirements, detailing their communications with the Association. (DE 26-1 ¶56.)

The exercise of pendant jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Coleman v. City of Peoria*, 925 F.3d 336, 352 (7th Cir. 2019). The

doctrine of pendent jurisdiction is rooted in the idea that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726. Under 28 U.S.C. § 1367(c), the Court may decline to exercise jurisdiction over claims if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

As the Association notes, there is no Indiana case law interpreting the grievance provisions of the Indiana Condominium Act, a relatively recent statute. (DE 18 at 12). The Seventh Circuit has indicated that the absence of state law decisions is sufficient to render a case novel for purposes of section (c).

*Melton v. Tippecanoe County* presented a state law exhaustion issue under the Indiana Wage Claims Statute. 2014 WL 1230735 (N.D. Ind. 2014), *aff'd* 838 F.3d 814 (7th Cir. 2016). There, the district court declined to exercise pendant jurisdiction, stating among other reasons that "the claim raises a complex issue of state law related to exhaustion and what it means for a case to 'work its way through the proper channels . . . before it may be brought in court.'" *Id.* at *5 (citing *Lemon v. Wishard Health Servs.*, 902 N.E.2d 297, 301 (Ind .Ct. App. 2009)).

In *Corre Opportunities Fund v. Emmis*, Judge Easterbrook observed that "the reader will note that we have not cited a single decision by an Indiana court. That's because none interprets the statutes we have discussed." 792 F.3d 737, 741 (7th Cir. 2015). None of the parties had challenged the court's jurisdiction, however, so the Seventh Circuit proceeded to interpret the statute. Nonetheless, Judge Easterbrook stated that "[l]eft to our own devices, we would have thought that these novel state-law questions belong in state court." *Id*.

Given the absence of interpretive guidance from Indiana courts regarding the Indiana Condominium Act and its grievance procedures, this Court declines to exercise jurisdiction over the McGraths's state law claims pursuant to § 1367(c)(1). Moreover, having failed to brief this issue, the Plaintiffs have waived any of their arguments to the contrary. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived...... "). The Court will deny the McGraths leave to amend the complaint as to these claims.

### (2) Failure to State a Claim

#### (a) Standard

The Court looks at the proposed second amended complaint to determine whether it would withstand a motion to dismiss. *Bower*, 978 F.2d at 1008. When considering a motion to dismiss under Rule 12(b)(6), the Court must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff, without engaging in fact-finding. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). To survive a Rule 12(b)(6) motion, a complaint typically must meet the "notice pleading" requirement of Rule 8(a), setting forth "a short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the.......claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While detailed factual allegations are not necessary, merely reciting the elements of a cause of action is not sufficient. The plaintiff must allege facts that, when "accepted as true, [ ] state a claim to relief that is plausible on its face....... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A plaintiff's claim need not be probable, only plausible, but "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

*(b) Discussion*

The Fair Housing Act prohibits discrimination on the basis of disability in the provision of housing. 42 U.S.C. § 3604. There are several theories of liability available to private individuals seeking to enforce their rights under the FHA, including the failure to accommodate and intentional discrimination theories raised in the proposed second amended complaint.

*(i) Failure to Accommodate*

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities with such dwelling, because of a handicap" of a person residing in the dwelling. 42 U.S.C. § 3604(f)(2). The FHA specifies that such discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B*)*. "Although the plain language of the FHAA provides little guidance concerning the reach of its accommodation requirement, the contours of the obligation have been given substantial elaboration by [the Court of Appeals for the 7th Circuit] and other courts of appeals." *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006) (en banc). The elements of a failure to accommodate claim are well-settled: "To prevail on an FHA accommodation claim, a [1] disabled plaintiff must establish that he [2] requested and [3] was

9

denied an accommodation that was both [4] reasonable and [5] necessary to afford him an equal opportunity to use and enjoy his dwelling." *United States v. WHPC–DWR, LLC*, 491 F. App'x 733, 736 (7th Cir. 2012); *see also Wisc. Cmty. Servs., Inc.*, 465 F.3d at 749.

Neither of the first two prongs are disputed. Both sides acknowledge Tim's and Martin's disabilities (DE 9 ¶7; DE 18 at 2–3) and both acknowledge that the McGraths requested the Association's approval for the construction project. (DE 9 ¶42; DE 18 at 4.)

As for the third prong, the Association does not dispute that it still, about two years later, has not provided the McGraths with the paperwork necessary for building the additional exit. (DE 18 at 4). However, the Association denies that the failure to issue the paperwork constitutes denial of an accommodation. (DE 18 at 8.) The Association asks how the McGraths could claim to have both won the vote and been denied the accommodation. (DE 18 at 8.) In suggesting that the McGraths could not hold both positions at the same time, the Association attempts to draw a parallel to the Ninth Circuit case of *Dubois v. Association of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir. 2003). (DE 18 at 8.) There, a condominium association issued a temporary exemption to a rule forbidding pets to accommodate for the plaintiff's disability. *Id.* at 1178. The association did not resolve the plaintiff's accommodation request with any finality, but nonetheless permitted her to keep the requested pet in her condominium. *Id*. As such, the court found no denial. *Id.* at 1179. This is clearly distinguishable from the current case where the Association's inaction prevents the McGraths from moving forward with the building project. This is not a case where the accommodation was in fact granted, but rather a case of constructive denial. *See Bhogaita v. Altamonte Heights Condominium Ass'n, Inc.*, 765 F.3d 1277 (11th Cir. 2014) (finding that indeterminate delay functions as denial).

Regarding the fourth prong, the Association does not dispute the reasonableness of the requested accommodation. Reasonableness is a fact-specific inquiry weighing what burden a proposed accommodation would place on the housing provider as well as the efficacy of the accommodation in alleviating the impact of the disability. *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002). Here, both sides acknowledge that several similar construction projects have been approved for members of other units, functionally admitting that it would be little to no burden on the Association to issue similar permission to the McGraths (DE 9 ¶30–37, DE 18 at 3).

Finally, the Association asserts that the proposed accommodation was not necessary, characterizing it as a "want" rather than a need. (DE 28 at 3–4.) The Association is correct that the FHA does not require "*more* or *better* opportunities" for people with disabilities but seeks, more modestly, to place them on equal footing with others in the housing market. (DE 18 at 8 (citing *Cinnamon Hills Youth Crisis Center, Inc. v. St. George City*, 685 F.3d 917, 922 (10th Cir. 2012)); *see also Wisc. Cmty. Servs., Inc.*, 465 F.3d at 749; *Oconomowoc*, 300 F.3d at 783. Nonetheless, the McGraths have alleged necessity. They have described the limitations Tim and Martin face in daily life. Further, they have noted the impacts of autism on communication, particularly in emergencies, and have identified the sorts of emergency situations, such as a fire or natural disaster, in which an additional exit would be necessary. (DE 26-1 ¶1, 7, 40.) While not conclusive proof of necessity, the McGraths have put forward an argument sufficient to state a claim.

Taking all five elements together, the McGraths state a plausible claim under the denial of accommodation theory.

### (ii) Intentional Discrimination

The proposed second amended complaint also states a claim for intentional discrimination. To prove intentional discrimination based on disability under the FHA, a plaintiff must show that the defendant discriminated against plaintiff "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling" because of a handicap of the buyer or renter, person intending to reside in the dwelling, or any person associated with the buyer or renter. 42 USC § 3604(f)(2).

Allegations of intentional discrimination are often based on circumstantial evidence, and the Seventh Circuit has cautioned the courts not to jump to conclusions in such contexts. *See Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009) (warning against hasty grant of summary judgment in the context of intentional discrimination under the FHA). Further, as the Supreme Court has held, claims of discrimination do not need to establish a prima facie case (including intent) at the pleading stage and are not held to a higher pleading standard than what is generally required under Federal Rule of Procedure (8)(a)(2). *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–11 (2002). As the Seventh Circuit has indicated, *Swierkiewicz* remains good law post-*Iqbal*. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013).

Here, the McGraths have alleged sufficient facts in support of their intentional discrimination claim. They state that several members of the Association attempted to change their votes to prevent the McGraths from proceeding with their staircase. The McGraths state that these vote-changing efforts stemmed from "discriminatory animus against . . . the disabled individuals in the McGrath family." (DE 26-1 ¶73.) While the McGraths have provided no response brief, the Court finds sufficient allegations in the complaint to survive the motion to dismiss on an intentional discrimination theory. To illustrate the alleged animus, the McGraths have described

hostile comments made by other members of the Association. (DE 9 ¶43–44.) Further, they describe the Association's willingness to grant parallel requests to similarly situated unit owners who do not have disabled family members. (DE 9 ¶32–33.) In total, these allegations are sufficient to allege a cause of action for intentional discrimination.

Thus the McGraths' proposed second amended complaint is not futile with regard to the FHA claims.

### D. Conclusion

For the reasons stated above, the Court GRANTS in part the McGraths' Motion for Leave to File Their Second Amended Complaint (DE 24). In particular, the leave is granted as to their Fair Housing Act claims and denied as to their state law claims. The Court DENIES Defendants' Motion to Dismiss (DE 17) as moot. Finally, the Court ORDERS the McGraths to file the second amended complaint as a new docket entry, with state law claims removed.

SO ORDERED.

ENTERED: May 13, 2021

/s/ JON E. DEGUILIO
Chief Judge
United States District Court