UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL MCGRATH, et al., | |
| Plaintiffs, | |
| v. | Case No. 3:20-CV-656 JD |
| DUNECREST CONDOMINIUM ASSOCIATION, et al., | |
| Defendants. | |

**OPINION AND ORDER**

The Court now considers Defendants Holly Candella, Michael Hernandez, Janet Moran, and Ruth Palonis's motion for judgment on the pleadings (collectively, the "Individual Defendants"). (DE 60.) The Individual Defendants assert that the claims brought against them in the Third Amended Complaint are barred by the applicable statute of limitations. Because it is unclear when the claims accrued, the Court denies the motion for judgment on the pleadings.

**A.     Factual Background**

In line with Federal Rule of Civil Procedure 12(c), the Court views and recounts the allegations in the light most favorable to the non-moving party.

In 2009, Michael McGrath and Jill McGrath ("McGraths") purchased Unit 121 of the Dunecrest Condominium Association ("Association"), a property located along the Indiana Dunes lakeshore. Michael and Jill have five children.[1] Two of these children, Tim and Martin

---

[1] Each of Michael and Jill's children are adults except for CM. Four of the children live with Michael and Jill and are named plaintiffs.

McGrath, are autistic and qualify as disabled persons under the Fair Housing Act. Both Tim and Martin have trouble facing unexpected circumstances, such as emergency situations.

Unit 121 only had one safe way to exit the unit, which was through the main entranceway. In order to provide a safe, secondary exit to the ground level, the McGraths requested that the Association allow as a reasonable accommodation a small extension to their deck, which they had abutting their living room. Each of the other seven condos at the Association had similar decks. By the time of the McGraths' request, the Association had, in fact, previously approved three other unit owners' requests to add deck extensions. Each of these other owners who had their proposals for deck extensions approved were not disabled. For the other owners, the Association promptly approved the extension plans and supplied the proper paperwork for those projects to begin.

The McGraths requested a Special Association meeting where they would present the bids and plans submitted by contractors regarding the proposed extension. On July 21, 2018, this Special Association meeting took place. After some discussion was had regarding whether the size of the proposed deck should be reduced and whether a security system should be required, the proposal moved on to a vote. The precise tally of the vote is somewhat unclear. According to the Third Amended Complaint, the plan was initially passed by a majority of the other owners, 5-3. However, the day after the vote, one owner, Janet Moran, changed her vote, which the McGraths assert was not allowed under the Association's rules. If Moran was allowed to change her vote, then the tally would be tied, 4-4. Finally, the McGraths allege that two of the owners who cast their vote in opposition to the plan, Holly and Frank Candella, were not the legal owners of their unit and so their vote was invalid. If the Candella's vote were invalid, then this

would makes the true tally either 5-2 or 4-3, depending on whether Moran's change of vote was proper.

Despite having the clear majority vote after the Candella's votes were removed, the Association then failed to issue paperwork necessary for the McGraths to obtain building permits to begin the project, even though the McGraths repeatedly made requests for the paperwork. The McGraths assert that the failure to issue the paperwork necessary to obtain building permits to begin the project was based on discriminatory animus towards the McGraths due to the disabilities of Tim and Martin. The McGraths then made repeated requests to the Association to try to resolve the dispute, but the Association failed to respond or place the item on the agenda.

On July 16, 2020, Michael McGrath, Jill McGrath, Tim McGrath, Martin McGrath, Colin McGrath, and CM McGrath (collectively, the "Plaintiffs") filed a Complaint against the Association. (DE 1.) The Plaintiffs filed two amended complaints and were granted leave by the Court to file a third. (DE 9; DE 30; DE 50.) On August 5, 2022, the Plaintiffs filed a Third Amended Complaint, which, in addition to the Association, now included four individual defendants: Holly Candella, Ruth Palonis, Michael Hernandez, and Janet Moran (collectively, the "Individual Defendants"). (DE 50.) Each Individual Defendant is a unit owner at the Dunecrest Condominiums. The Third Amended Complaint contained seven counts, including for failure to provide a reasonable accommodation and for discrimination against the Plaintiffs on the basis of Tim and Martin McGrath's disability. The Individual Defendants then filed a motion for judgment on the pleadings, which the Court now considers. (DE 60.)

**B.**     **Legal Standard**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the parties have filed a complaint and answer. Fed. R. Civ. P. 12(c). Judgment on

the pleadings is appropriate when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *United Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). The standard employed to review a Rule 12(c) motion is the same standard employed when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6). The Court views "the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (quotation marks and citation omitted).

In reviewing the motion, the Court is confined to the matters addressed in the pleadings. *See Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005). The pleadings include "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452 (citing Fed. R. Civ. P. 10(c)). The Court may also consider documents attached to the motion for judgment on the pleadings provided they are referred to in the Plaintiffs' complaint and are central to the Plaintiffs' claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). Additionally, the Court may take judicial notice of public records such as state court documents. *Spiegel v. Kim*, 952 F.3d 844, 847 (7th Cir. 2020).

**C.     Discussion**

The sole argument that the Individual Defendants raise is that the claims against them are barred under the Fair Housing Act's statute of limitations. When a defendant raises noncompliance with the statute of limitations at the pleading stage, dismissal is "irregular" because "the statute of limitations is an affirmative defense." *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Because "complaints need not anticipate and attempt to plead around defenses," *id.*, a motion for judgment on the pleadings based on failure to comply with

4

the statute of limitations should be granted only where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Meaning, the plaintiff must affirmatively plead himself out of court. *Id.* Furthermore, because the statute of limitations is an affirmative defense, the defendant bears the burden of proof. *See Petroleum Helicopters, Inc. v. Rolls-Royce Corp.*, No. 115CV00840TWPD ML, 2016 WL 7179362, at *4 (S.D. Ind. Dec. 9, 2016) ("A plaintiff's failure to file its claim within the proscribed statute of limitations is an affirmative defense under Rule 8(c)(1), which Defendant has the burden of pleading and proving.").

The Individual Defendants argue that the applicable statute of limitations under the FHA has run because the unit owners' rejection of the McGraths' requested deck extension occurred on July 21, 2018. (DE 60 at 7.) The FHA provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). In other words, an aggrieved person must bring the lawsuit within two years of either "the occurrence . . . of an alleged discriminatory housing practice" or "the termination of an alleged discriminatory housing practice." If the statute of limitations did accrue on July 21, 2018, as to the claims brought against the Individual Defendants, then the statute of limitations would have run as to those defendants by the time the Plaintiffs filed their Third Amended Complaint on August 5, 2022. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) ("Accrual is the date on which the statute of limitations begins to run.").

In their response, the Plaintiffs argue that the statute of limitations has not run because the Individual Defendants are violating the FHA on an ongoing, continuing basis. (DE 61 at 13.) As indicated above, the FHA provides that a civil enforcement action must be filed "not later

5

than 2 years after the occurrence *or the termination* of an alleged discriminatory housing practice[.]" 42 U.S.C. § 3613(a)(1)(A) (emphasis added). The italicized language was added to the FHA in 1988 to codify the continuing violation doctrine recognized in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982): "[W]here a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [two years] of the last asserted occurrence of that practice."

The Plaintiffs allege two distinct theories of discrimination in their Third Amended Complaint. First, the Plaintiffs allege that "[t]he failure of the Association to provide a prompt response to the McGrath family['s] request for the deck extension, following a majority vote in support of the project" and the fact that the Association had been withholding the necessary paperwork "required by the City of Michigan City for the McGraths to construct the requested deck extension" was "based on discriminatory animus [in violation of] the Fair Housing Act."[2] (DE 50 ¶¶ 69–71.) Alternatively, the Plaintiffs allege that the unit owners who "changed their position and voted against the McGraths' request for a reasonable accommodation," was based on discrimination in violation of the Fair Housing Act. (*Id.* ¶ 73.) Given these alternative allegations, it is unclear on the basis of the Third Amended Complaint whether the accrual date for the statute of limitations would be when the vote occurred or a continuing violation based on the paperwork being withheld after the majority vote in favor of the extension project.

---

[2] Even though some allegations in Count I refer to "the Association," the Plaintiffs ask the Court to "[d]eclare that *Defendants*' actions constitute illegal disability-based discrimination under the Fair Housing Act," which supports that Plaintiffs are bringing the theory regarding paperwork against the Individual Defendants in addition to the Association. (DE 50 ¶ 71.)

In their reply, the Individual Defendants assert, without any citation, that the "plaintiffs admitted in their response brief that the alleged wrongful conduct was their vote." (DE 62 at 6.) But the response by the Plaintiffs does not clearly abandon the theory that the Individual Defendants could be liable for the failure to issue the necessary paperwork. Rather, the Plaintiffs write:

> The conduct of the Association, which is governed by the Board, was the failure to provide paperwork necessary to obtain building permits, despite the fact that the vote during the special meeting of July 21, 2018, was 5 to 3 in favor of the proposed deck extension. This wrongful conduct *could have* been occasioned by the president of the Board, rather than by the conduct of the individual Defendants, and is different and discrete conduct than that of the individual Defendants. The wrongful conduct of the individual Defendants is their vote, or purported vote, to deny the McGraths permission to construct a deck extension, based on discriminatory animus.

(DE 61 at 4 (emphasis added).) It is unclear to the Court whether the Plaintiffs' response was necessarily disclaiming the theory that the Individual Defendants may be liable for the failure to issue paperwork. For instance, the Plaintiffs only indicate that the failure to issue paperwork "could have" been occasioned by the president, rather than the Individual Defendants, which implies that the Individual Defendants could have been responsible for that failure. If the Plaintiffs were abandoning that theory, then they likely would have said clearly that the failure to issue paperwork "was" occasioned by the president.

Furthermore, the Plaintiffs in their response argue that the failure of the board to change their vote after the adjournment of the meeting, based on their discriminatory motives, constitutes an ongoing, continuing violation of the Fair Housing Act. (DE 61 at 13–15.) In their reply, the Individual Defendants assert that "[u]nder plaintiff's theory of the continuing violation of the statute of limitations, [the statute of limitations] would never run on their claims. This cannot be." (DE 62 at 6–7.) However, the Individual Defendants fail to include a single citation

7

in support of this argument. It is not the job of this Court to develop the Individual Defendants' arguments on their behalf. *See United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("We have repeatedly and consistently held that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Given that it was the Individual Defendants' burden to establish that the statute of limitations had run, the Court finds that this omission requires denial of the motion for judgment on the pleadings.

The Court notes that this denial does not necessarily mean that the Individual Defendants will not ultimately prevail on their statute of limitations defense at summary judgment. Rather, the denial is because: (1) it is unclear to the Court whether the Plaintiffs are proceeding on the theory that the Individual Defendants are liable for the failure of paperwork to issue; (2) the Individual Defendants provide no substantive argument explaining why the continuing violations doctrine does not apply; and (3) that granting motions for dismissal based on statutes of limitations at the pleading stage is rare. *See, e.g.*, *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 645 (7th Cir. 2022) ("In rare circumstances, a plaintiff may plead himself out of court by admitting all of the essential elements of an affirmative defense in his complaint."); *United States v. U.S. Steel Corp.*, 966 F. Supp. 2d 801, 805 (N.D. Ind. 2013) ("A plaintiff's failure to adhere to a statute of limitations is an affirmative defense and is rarely a good reason to dismiss under Rule 12(b)(6)."); *United States v. Aniemeka*, No. 17-CV-4011, 2021 WL 949344, at *5 (N.D. Ill. Mar. 12, 2021) (explaining that defendants prevailing in motion to dismiss on statute-of-limitations grounds will only occur in the "rare circumstance" of the Court being unable to "imagine any scenario in which the Complaint was timely").[3]

---

[3] The Court notes that the parties both address, in some detail, whether the statute of limitations was equitably tolled. (DE 61; DE 62.) The doctrine of equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if

**D.     Conclusion**

For the reasons stated above, the Court DENIES the Individual Defendants' motion for judgment on the pleadings. (DE 60.) The Individual Defendants may renew their statute of limitations argument if they choose to move for summary judgment.

SO ORDERED.

ENTERED: April 7, 2023

                                                  /s/ JON E. DEGUILIO
                                                  Chief Judge
                                                  United States District Court

---

despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001). The Court does not address equitable tolling because it is unclear to the Court on the basis of the Third Amended Complaint and the arguments presented by the parties when the statute of limitations started running. The Individual Defendants appear to have put the cart before the horse by providing a substantive discussion of equitable tolling (DE 62 at 2–6), without providing a substantive discussion of accrual and the continuing violation doctrine. Equitable tolling only becomes relevant *if* the statute of limitations has run on the claims. As described above, that is unclear, so a discussion of equitable tolling is unnecessary.