# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

MICHAEL MCGRATH, JILL MCGRATH,
TIM MCGRATH, MARTIN MCGRATH,
COLIN MCGRATH, and CM MCGRATH,

Plaintiffs,

v.

DUNECREST CONDOMINIUM
ASSOCIATION, HOLLY CANDELLA,
RUTH PALONIS, MICHAEL
HERNANDEZ, and JANET MORAN,

Defendants.

CAUSE NO.: 3:20-CV-656-TLS-MGG

## OPINION AND ORDER

This lawsuit arises out of the Plaintiffs' desire to build a bigger balcony with a staircase

on their condominium unit. In June 2018, Plaintiffs Michael and Jill McGrath submitted a

proposal to the Defendant Dunecrest Condominium Association to build a balcony extension

along with stairs leading to the ground. When the proposal was not approved, the Plaintiffs,

Michael McGrath, Jill McGrath, Tim McGrath, Martin McGrath, Colin McGrath, and CM

McGrath (the McGraths), filed a Complaint [ECF No. 1] in this Court against Defendant

Dunecrest Condominium Association (the Association). The McGraths amended their Complaint

three times, ultimately alleging in their Third Amended Complaint [ECF No. 50] that under the

Fair Housing Act, the proposed balcony extension is a reasonable accommodation for their adult

autistic children—Plaintiffs Tim and Martin McGrath, the Association's denial of the balcony

extension constituted familial status and disability discrimination, and the Association retaliated

against them for filing this lawsuit. In their Third Amended Complaint, the McGraths also added

as defendants Dunecrest Condominium owners Holly Candella, Ruth Palonis, Michael

Hernandez, and Janet Moran (collectively, the Individual Defendants), alleging that the Individual Defendants discriminated against them by voting against the proposed balcony extension. This matter is now before the Court on Defendant Dunecrest Condominium Association's Second Motion for Summary Judgment [ECF No. 72], which is fully briefed and ripe for ruling. For the reasons set forth below, the Court grants summary judgment in favor of the Association. The Court also sua sponte grants summary judgment in favor of the Individual Defendants.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*

*v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "irrelevant or unnecessary factual disputes do not preclude summary judgment." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (cleaned up). Further, "[a] party 'must present more than mere speculation or conjecture to defeat a summary judgment motion.'" *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 585 (7th Cir. 2021) (quoting *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 936 (7th Cir. 2021)).

## OBJECTIONS

The Material Facts are taken from the Association's Statement of Material Facts [ECF No. 73] and the McGraths' Statement of Additional Material Facts [ECF No. 77-45]. Whether the subject of a party's objection or on the Court's own review, the Court disregards substantive arguments and characterization of evidence in the fact statements and considers the facts only as supported by the cited evidence of record. *See, e.g.*, *Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 716 (N.D. Ill. 2016). However, the Court addresses the Association's evidentiary objections. *See* Fed. R. Civ. P. 56(c)(2); *Steffek v. Client Servs., Inc.*, 948 F.3d 761, 769 (7th Cir. 2020). Noting no opposition from the McGraths to the following objections, the Court sustains them for the reasons set for below.

The Association raises objections to the opinions of Erik Emmick [Pl. Ex. 9, ECF No. 77-10], Laura Hartwell [Pl. Ex. 11, ECF No. 77-12], and Katie Kusnik [Pl. Ex. 23, ECF No. 77-24] that are used by the McGraths in their attempt to show that the proposed balcony extension with stairs is a necessary accommodation for Tim and Martin's autism. The Court sustains the Association's objections on the grounds of lack of personal knowledge. This is because of the

following: (1) Emmick did not mention the proposed balcony extension or secondary exit in his letter, and he testified that he has not seen the proposed balcony extension, has not been to the McGraths' condominium, and does not know how many exits their condominium has, Pl. Ex. 9; Def. Ex. 5, p. 16, 23, ECF No. 72-5; (2) Hartwell testified that she has not seen the proposed balcony extension, has not been to the McGraths' condominium, and does not know Tim and Martin's exit preferences yet considers such information important to know before expressing an opinion on the secondary exit, Def. Ex. 6, p. 16, 19–21, ECF No. 72-6; and (3) although Kusnik had worked with Tim and Martin from 2009 through 2012, there is no indication that she had worked with them in the six years before the McGraths' proposed the balcony extension was submitted to the Association in 2018, Pl. Ex. 23 ¶ 3. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

The Court also excludes the statements by Kusnik because it appears that the McGraths are attempting to use them as a form of expert witness testimony on accommodations for Tim and Martin in relation to their autism without having made any of the requisite expert discovery disclosures under Federal Rule of Civil Procedure 26 and without justifying the nondisclosures. *See Novak v. Bd. of Trs. of S. Ill. Univ.*, 777 F.3d 966, 972 (7th Cir. 2015) ("Federal Rule of Civil Procedure 26(a)(2) requires parties to timely disclose their expert witnesses in accordance with any deadlines set by the district court."); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) (explaining that even those with direct knowledge of an individual's medical condition "must be designated as experts if they are to provide expert testimony"); *Rossi v. City*

*of Chicago*, 790 F.3d 729, 738 (7th Cir. 2015) ("The exclusion of non-disclosed evidence is mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." (cleaned up)).[1]

The Court further sustains the Association's objection to the declaration of Kusnik on the grounds that it was not sworn under penalty of perjury. Although the declaration contains a notary seal, there is no indication that the declaration was true under penalty of perjury. *See* Pl. Ex 23. 28 U.S.C. § 1746 requires that statements in declarations that are used as evidence be made "as true under penalty of perjury." 28 U.S.C. § 1746.

To the extent that in their responsive brief, other than with the conclusory assertation that Emmick and Hartwell have knowledge related to Tim and Martin's disability, the McGraths did not respond to the Association's objections to the opinions of Emmick and Hartwell, any such arguments are waived. *See Bonte v. U.S. Bank, N.A*., 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Horne v. Elec. Eel Mfg. Co.*, 987 F.3d 704, 728 (7th Cir. 2021) ("It is not our role to save a party from . . . failing to advance arguments that may be advantageous. Moreover, [plaintiffs] may decide for strategic business reasons not to pursue legal arguments that may be available to them.").

## BACKGROUND AND MATERIAL FACTS

### A.    McGraths' Dunecrest Condominium Unit

The Defendant Dunecrest Condominium Association (the Association) is a group of eight condominium unit owners in the Dunecrest Condominiums (Dunecrest) in Michigan City, Indiana. ECF No. 50 ¶ 9. Dunecrest consists of a North Building and a South Building, each with four condominium units. *Id*. ¶¶ 14–15. The North Building owners are Plaintiffs Michael and Jill

---

[1] Although the McGraths disclosed Kusnik as a potential witness, they did not disclose her as a potential expert witness by December 1, 2021, nor was her opinion disclosed in discovery. *See* ECF Nos. 34, 35, 77-29 ¶ 19 (listed as Katie Gibson who is now known as Katie Kusnik).

McGrath (Unit 121), Defendant Michael Hernandez (Unit 125), Defendant Ruth Palonis (Unit 123), and Defendant Janet Moran (Unit 127). *Id*. ¶ 30. The South Building owners, during the relevant time, were Frank Candella and Defendant Holly Candella (Unit 131), Roy Plush (Unit 129), Laura Freeman (Unit 135), and George Konstantinopoulos (Unit 133). *Id*. ¶ 31.

In 2009, Michael and Jill McGrath purchased their unit in Dunecrest, which is located on the second floor. Pl. Ex. 34 ¶ 2, ECF No. 77-35; ECF No. 50 ¶ 21. Since that time, the McGraths have used their condominium as a weekend home; their primary residence is in Evergreen Park, Illinois. Pl. Ex. 1, pp. 21, 145, ECF No. 77-2; Pl. Ex. 2, p. 18, ECF No. 77-3. Plaintiffs Collin McGrath, CM McGrath, Tim McGrath, and Martin McGrath are Michael and Jill McGrath's children who live with them. Pl. Ex. 2, p. 11. Tim and Martin McGrath are adults living with autism. *Id*. at p. 12.

At Dunecrest, the main entrance is currently the McGraths' only reliable method of entering and exiting their condominium. Pl. Ex. 1, p. 167; Pl. Ex. 2, pp. 25–26, 31–32, 57. This is because, for the McGraths to exit the property through the secondary rear exit, they must exit onto their back deck, pass through a gate that is closed and/or locked and onto the rear deck of the unit presently owned by their neighbor—Defendant Michael Hernandez, cross over Hernandez's deck, and then exit his deck through another locked gate to get to the common area. Pl. Ex. 1, p. 93–96; Pl. Ex. 2, p. 25–26, 31–32. Also, the back outside area of their condominium unit is otherwise surrounded by a tall retaining wall. Pl. Ex. 13, PLAINTIFF 000168, 000170, ECF No. 77-14, pp. 8, 9 of 18. Should the area around the primary exit be engulfed by fire or made inaccessible by some natural disaster, the McGraths would have no reliable way of getting out of their unit. Pl. Ex. 1, pp. 131–34, 166–71. In 2018, the McGraths proposed extending their

side balcony and adding a staircase to the balcony, in part, to have a reliable secondary exit. *See id*. at 167; Pl. Ex. 41, ECF No. 77-42.

The balcony that is the subject of the McGraths' proposed extension with a staircase is the lower balcony in the picture below:



ECF No. 73 ¶ 27.

**B.      Tim and Martin McGrath**

Plaintiffs Tim and Martin McGrath are identical twins who were diagnosed with autism when they were 28 months old. Pl. Ex. 1, pp. 16; Pl. Ex. 2, p. 12. As of February 28, 2022, they were 26 years of age. Pl. Ex. 2, p. 11.

Jill McGrath testified that Tim and Martin pace constantly because of their autism. *Id*. at 51. She also said that Tim and Martin's autism was "definitely made part of the reason why we needed a more reliable secondary exit . . . and . . . personally I wanted . . . another three feet [added to the balcony] so I could put a little bigger table out there so I could help [feed] [Martin]. He's got a feeding tube." *Id*. at 60. She also said, "[Tim and Martin] could pace a little bit out

there . . . . It's literally just asking for a little bit more space for enjoyment for the family and a reliable exit." *Id*.

And, Michael McGrath testified that the proposed balcony extension "would allow Marty from instead of going from the kitchen to the glass door, turning around, going back into the kitchen to the glass door in the condo, he would then be able . . . to pace on the deck or go around, a little more room." Pl. Ex. 1, p. 160. He also testified, "Tim does the same thing, is all I can say." *Id*.

**C.    2018 Proposed Balcony Extension and July 21, 2018 Vote**

Although Michael McGrath first proposed a balcony extension to the Association in 2013, he did not ultimately receive a favorable bid from a builder until Spring 2018 when he received one from Deck Masters. Pl. Ex. 1, p. 118, 146; Pl. Ex. 17, ECF No. 77-18. On June 18, 2018, he sent an email to the Association members stating the McGraths' reasons for their proposed balcony extension, which were to have another exit point that addresses their safety concern, prevent wear and tear on the interior of their hallway, and space for outdoor grilling, and on June 25, 2018, he sent a copy of the bid to the Association members. Pl. Exs. 17, 41. The proposed balcony extension was for an eight-foot extension of the existing balcony along the side of the unit towards the rear with stairs leading to the ground. Pl. Ex. 41.

On June 21, 2018, Michael McGrath sent another email to the Association members in response to questions. *See* Def. Ex. 2, Ex. 8, ECF No. 72-3, p. 103 of 116. He reiterated the reasons for the proposed balcony extension, stating that "[f]irst and foremost, safety of my family, having a second exit in event of an emergency, fire, tornado, what have you." *Id*. He also mentioned, "As everyone know[s], we have two adult sons with special needs. In the event of an emergency we need to make sure they have more than one option of getting out safely." *Id*.

As a result of the McGraths' emails, the Association called a special meeting, which took place on July 21, 2018, for the sole purpose of voting on whether to approve the balcony extension and stairs proposed by the McGraths. Pl. Ex. 1, p. 150; Pl. Ex. 39, ECF No. 77-40. The Association minutes for that meeting reflect that it was attended by North Building owners Hernandez, Palonis, Michael and Jill McGrath, and Moran and South Building owners Holly and Frank Candella, Plush, Freeman, and Konstantinopoulos. Pl. Ex. 39. For voting on the McGrath proposed balcony extension, Plush, Freeman, Konstantinopoulos, and McGrath were "yes" votes, while Moran was a "yes" vote conditioned on the installation of security shutters, and Palonis, Candella, and Hernandez were "no" votes. *Id*. pp. 3–4. However, on July 22, 2018, Moran advised the homeowners by email that her vote was a "no." *Id*.

## D.   Defendant Candella's Three Emails

After the McGraths filed the instant lawsuit on July 16, 2020, the Association sent the McGraths three emails via Defendant Candella. First, on August 13, 2021, Defendant Candella sent an email to Michael McGrath, stating:

> Your special assessments have not yet been paid. They were due July 30, 2021. Per bylaws, the Association will be placing a lien on the properties effected[sic] should the assessments not be paid. How far do you want to take this Mike? You were granted stairs for the safety of your children. You were granted a walk-around like that of others. You failed to act.

Pl. Ex. 34 ¶ 11.

On September 20, 2021, one month after sending the "lien email," Defendant Candella sent another email to Michael McGrath, stating:

> Mike; In an effort to respect compliance of Association Bylaws and Dec. of Horizontal Property, the board is asking that you comply with the following:
> • Please remove all anchors, bolts, etc. attached to the outside of building that you have installed and repair and paint holes. This is asso. property. Janet and Roy have asked you to do so on separate occasions in the past.
> • Please repair electric garage door opener as it is a security issue.

*Id.* ¶ 16; Def. Ex. 7 ¶ 23, Ex. G, ECF No. 72-7.

Additionally, the Third Amended Complaint was filed on August 5, 2022. *See* ECF No. 50. Shortly after it was filed, the issue of grilling on front balconies/decks was raised by Defendant Candella as the Association President. Pl. Ex. 34 ¶ 44. On October 6, 2022, Candella advised the Association that she met with Michigan City Fire Marshal Bruder on September 1, 2022. *Id.* ¶ 45. She also emailed the agenda for the October 8, 2022 Association fall meeting to all unit owners. *Id.* ¶ 46. The email included a document titled "Dunecrest Fire Marshal Report" dated September 1, 2022, which was attached as a separate document to the agenda. *Id.* The "Fire Marshal Report" contained items from the Michigan City Fire Marshal Bruder. *Id.* ¶ 47. The report specified that there is to be no grilling on balconies and the owner can be cited and that there is to be no heat producing appliance outdoors 10 feet from the exterior wall. *Id.*

If the statements contained in the Fire Marshal Report were true and accurate findings of the Fire Marshal, the McGrath family, and only the McGrath family, would be prohibited from outdoor grilling, due to the size of their rear deck—which is smaller than the rear deck of all other units. *Id.* ¶ 48. Based on Michael McGrath's observations during the years that he has owned Unit 121, all unit owners who engage in the practice of outdoor grilling do so using the rear deck/balcony. *Id.* ¶ 43. However, the McGraths are the only unit owners who engage in the practice of grilling on a front balcony. *Id.* ¶ 42.

## ANALYSIS

The Fair Housing Act (FHA), also known as Title VIII of the Civil Rights Act of 1968, allows an "aggrieved person" to file a civil action in federal court. *See* 42 U.S.C. § 3613(a)(1). The FHA defines an "aggrieved person" as "any person who– (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a

discriminatory housing practice that is about to occur." *Id.* § 3602(i). "Discriminatory housing practice" is defined as "an act that is unlawful under section 3604, 3605, 3606, or 3617 of" Title 42. *Id.* § 3602(f).

Here, the Association seeks summary judgment on each of the McGraths' claims brought under the FHA. The Court notes that the McGraths' arguments in their response brief in certain instances address two claims simultaneously. The Court will analyze each argument as appropriate to the relevant claim.

Based on a generous reading of the Third Amended Complaint and the Plaintiffs' response brief, the Court understands the Plaintiffs to be bringing three claims against the Association: a discrimination claim under 42 U.S.C. § 3604(f)(2) based on a failure to accommodate as defined by 42 U.S.C. § 3604(f)(3)(B); a disparate treatment claim under § 3604(b); and a retaliation claim under 42 U.S.C. § 3617. The Court will address each in turn and then address the McGraths' remaining claims against the Individual Defendants.

A.    **42 U.S.C. § 3604(f)(2) Discrimination Claim Based on Discrimination Because of a Handicap as Defined by 42 U.S.C. § 3604(f)(3)(B) for a Failure to Accommodate**

The FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). For purposes of this subsection, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).[2] To prove a

---

[2] Even if the McGraths were bringing their claim based on the definition of discrimination in § 3604(f)(3)(A), it would not change the analysis or result. *See* § 3604(f)(3)(A) (defining discrimination as including "a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied . . . if such modifications may be necessary to afford such person full enjoyment of the premises . . . .").

11

claim of discrimination under § 3604(f)(2) based on a failure accommodate as defined by § 3604(f)(3)(B), the McGraths must show that their proposed accommodation "(1) is reasonable, and (2) necessary, (3) to afford a handicapped person the equal opportunity to use and enjoy a dwelling." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002) (citing 42 U.S.C. § 3604(f)(3)(B)); *see Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 746, 748–49 (7th Cir. 2006) (evaluating a § 3604(f)(2) discrimination claim under the definition of discrimination as set forth in § 3604(f)(3)(B)).

Here, the McGraths proposed an accommodation in the form of a balcony extension with a staircase, which the Association denied. The parties do not dispute the reasonableness of the McGraths' proposed accommodation or that Plaintiffs Tim McGrath and Martin McGrath qualify as handicapped under the FHA because they are autistic. To prove unlawful discrimination under § 3604(f)(2) as defined by § 3604(f)(3)(B) for a failure to accommodate, the McGraths mainly argue that their current secondary exit from the back of the condominium is illusory and the proposed balcony extension will enhance Tim and Martin's quality of life. However, the McGraths' request for relief based on discrimination as defined by § 3604(f)(3)(B) requires a showing that it is "necessary," which is "essentially . . . a causation inquiry." *See Wis. Cmty. Servs., Inc.*, 465 F.3d at 749, 752. As the Association argues, the McGraths have not shown causation. Therefore, the Court must grant summary judgment in favor of the Association on the McGraths' § 3604(f)(2) discrimination claim.

The § 3604(f)(3)(B) causation requirement comes from the linking of the "necessary" and "equal opportunity" elements of the failure to accommodate legal standard and acts as a limit on a defendant's accommodation duty. *See Wis. Cmty. Servs., Inc.*, 465 F.3d at 749. As a result, "not every rule that creates a general inconvenience or expense to the disabled needs to be modified."

*Id.* "[T]he statute requires only accommodations necessary to ameliorate the effect of the plaintiff's disability so that [he] may compete equally with the non-disabled in the housing market." *Id.* To enforce this limitation, the Court asks "whether the rule in question, if left unmodified, hurts 'handicapped people *by reason of their handicap*, rather than . . . by virtue of what they have in common with other people.'" *Id.* at 749, 752 (quoting *Hemisphere Bldg. Co., Inc. v. Village of Richton Park*, 171 F.3d 437, 440 (7th Cir. 1999)).

In conducting the causation inquiry, the Court determines whether "but for his [handicap], [the plaintiff] would have been able to access the services or benefits desired." *Id.* at 754. A proposed accommodation is required when it directly "address[es] *the needs created by the handicaps*." *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1226 (11th Cir. 2008); *see Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 460 (3d Cir. 2002) ("[I]f the proposed accommodation provides no *direct* amelioration of a disability's effect, it cannot be said to be 'necessary.'" (cleaned up and emphasis added)); *Wis. Cmty. Servs., Inc.*, 465 F.3d at 749 (relying on the *Lapid-Laurel, L.L.C.* explanation for applying the causation requirement to a claim under § 3604(f)(3)). Examples of required accommodations include "the blind woman who obtains an exemption from a 'no pets' policy for her seeing eye dog, or the paraplegic granted special permission to live on a first floor apartment because he cannot climb the stairs." *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 923 (10th Cir. 2012). However, a defendant does not have a duty to accommodate a proposed modification when it "[goes] beyond addressing [those] needs and start[s] addressing problems *not caused* by a person's handicap." *Schwarz*, 544 F.3d at 1226 (citing *Wis. Cmty. Servs., Inc.*, 465 F.3d at 749) (emphasis added). A proposed modification addresses a problem not caused by a person's handicap when the problem "[affects] anyone . . . living in a dwelling,

not just handicapped people." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 562 (7th Cir. 2003).

For example, in *Good Shepherd*, the defendant city cut off water service to the plaintiff group home's lot. 323 F.3d at 562. In that case, the plaintiff argued "that by not supplying their lot with water and sewage, the city harmed the disabled adults by preventing them from living in the group homes." *Id*. That plaintiff contended that "the harm was 'by reason of their disability' because the potential residents were denied the benefit they, as developmentally disabled adults, receive from group living." *Id*. The *Good Shepherd* court concluded that the plaintiff's "reasoning [was] too attenuated" because "[c]utting off water prevents *anyone* from living in a dwelling, not just handicapped people, and therefore the prohibitions found in the [FHA] . . . do not apply to [the] case." *Id*. (emphasis added). "[T]he lack of accommodation argument [by the plaintiff in *Good Shepherd*] therefore failed because the residents' disabilities did not deny them an equal opportunity to obtain housing." *Nikolich v. Village of Arlington Heights*, 870 F. Supp. 2d 556, 565 (N.D. Ill. 2012) (explaining the causation inquiry for a claim under § 3604(f)(3) as illustrated in *Good Shepherd*).

Here, the McGraths have not shown causation. The McGraths do not argue that Tim and Martin's autism was the but-for cause of their need for the proposed balcony extension with a staircase.[3] Nor would the facts support such an argument.

Although the McGraths establish that autism causes Tim and Martin's need to pace and Martin's need for a feeding tube, the testimony of Michael McGrath and Jill McGrath reveals that the proposed balcony extension would merely provide *additional* room for Tim and Martin's

---

[3] Thus, the McGraths waive any argument on the issue of the but-for cause of Tim and Martin's need for the proposed balcony extension. *See Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

pacing and for feeding Martin by his feeding tube. Their testimony also reveals that Tim and Martin already pace and Martin is already fed by a feeding tube inside the condominium unit without the proposed extension. *See United States v. Trumbull Metro. Hous. Auth.*, No. 4:17-CV-101, 2018 WL 2183265, at *4 (N.D. Ohio May 10, 2018) (granting summary judgment in favor of the defendant when the plaintiffs "[did] not . . . offer[] any admissible evidence showing that it was necessary for Plaintiff JG to have a separate room *for the sole purpose* of administering his dialysis treatment" and "the evidence reveal[ed] that, Plaintiff JG need only conduct his dialysis treatment in a 'clean' room" (emphasis added)). To the extent the McGraths attempt to rely on the opinions of Erik Emmic, Laura Hartwell, and Katie Kusnik to establish Tim and Martin's needs, they are inadmissible for the reasons set forth in the Objections section above.

Additionally, the reasons the McGraths give for needing the proposed balcony extension address problems that affect anyone living in the McGraths' condominium unit. As the Association highlights, the reasons for the proposed balcony extension—that the McGraths provided in their June 18, 2018 email proposal to the Association—were to have another exit point that addresses the McGraths' safety concern, ease wear and tear on the interior of their hallway, and provide more space for outdoor grilling.

Moreover, in their response brief, the McGraths state that their current secondary exit is controlled by another unit owner in that he either keeps the gate to it locked or places a lock on the gate in a manner which gives the appearance that the gate is locked (thus the McGraths are not free to come and go from this exit). According to the McGraths, this is problematic because in case of an emergency, such as a fire, they cannot rely on the availability of the secondary exit. Another reason the McGraths give is that if the back area of their unit was impacted by an emergency such as a fire or tornado, it shares a common wall with the common stairway that

they primarily use to enter and exit the building; thus, if the McGraths' primary exit from their condominium unit was blocked by a natural disaster, they would be trapped in their unit. The McGraths also say that they cannot leisurely leave the condominium unit to go to the beach or return to their primary residence in Illinois by a secondary exit.

Similar to the water shut off in *Good Shepherd*, the unreliable second exit, wear and tear on the hallway, lack of space for grilling, entrapment in the unit if their primary exit was blocked, and no second exit to leisurely leave their unit are problems that are too attenuated from Tim and Martin's disability because the problems affect *anyone* living in the McGraths' condominium unit, not just those living with autism. *See Good Shepherd*, 323 F.3d at 562.

Therefore, even when viewing the evidence in the light most favorable to them, the McGraths fail to create a genuine dispute of material fact that Tim and Martin's autism is the but-for cause of their need for the proposed balcony extension and stairs. Accordingly, the Association is entitled to summary judgment on the McGraths' § 3604(f)(2) discrimination claim because the McGraths cannot establish that they were discriminated against as defined by § 3604(f)(3)(B). Thus, the Court need not consider the McGraths' additional arguments on statements and conduct evidencing discriminatory animus, pretext, suspicious timing, or Robert's Rules of Order.

**B.     42 U.S.C. § 3604(b) Disparate Treatment Claim Based on Familial Status**

Under § 3604(b), the FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). "Familial status" is defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with . . . a parent or another person having legal

custody of such individual or individuals." 42 U.S.C. § 3602(k)(1). Discrimination because of "familial status" thus entails discrimination based on "the presence of minor children in the household." *Snyder v. Barry Realty, Inc.*, 953 F. Supp. 217, 219 (N.D. Ill. 1996).

The Association argues that the McGraths do not "specifically identify a statutory basis for [their discrimination claims]" in the Third Amended Complaint. Def. Br. 14, ECF No. 74 (citing Third Am. Compl. ¶¶ 69, 73). As the Association points out, the McGraths allege that "[t]he failure of the Association to provide a prompt response to the McGrath family request for the deck extension with stairs, following a majority vote in support of the project, is evidence of the Association's animus and discriminatory conduct *towards a family with disabled family member[s]*." Third Am. Compl. ¶ 69 (emphasis added). Also, the McGraths "claim in the alternative, the . . . unit owners who . . . subsequently changed their position and voted against the McGrath's request for a reasonable accommodation, was based upon those Association members discriminatory animus *against the McGrath familial status, specifically the disabled individuals in the McGrath family*." *Id*. ¶ 73 (emphasis added). Thus, the McGraths base their theory of the Association's liability under § 3604(b) on the presence not of individuals under the age of 18 in the household but of the disabled individuals in their family—their autistic adult children Tim and Martin, which the McGraths refer to as "familial status."

However, the plain language of § 3604(b) does not provide a remedy for discrimination based on a family with disabled adults. *See Weiner v. Prairie Park Condo. Ass'n Inc*., No. 16 C 1889, 2016 WL 3444210, at *3 (N.D. Ill. June 23, 2016) ("A plain reading of the statute reveals that . . . 3604(b) provide[s] no remedy for disability discrimination."); *see also* 42 U.S.C. § 3602(k)(1) (defining "familial status" but *not* including households with disabled individuals in the definition). In their response brief, the McGraths contend that "[t]he overwhelming evidence

supports an inference that at least one of the discriminatory motives . . . was based on either or

both the McGraths' familial status and the disability status of Tim and Martin." Pl. Br. 7, ECF

No. 77. But the McGraths do not explain in their Third Amended Complaint or in their response

brief how they meet the FHA's definition of familial status, which only includes families with

individuals under the age of 18 living in a household, not families with disabled adults living in a

household. *See* 42 U.S.C. § 3602(k)(1). As the Association points out in its reply brief, the

"McGraths did not articulate the basis for discrimination but cite to [§ 3604(b)] . . . and refer to

vague comments about the size of their family and the behavior of their adult children." Def.

Reply 2.

      For these reasons, the Court concludes the McGraths are proceeding solely on a theory of

liability based on the presence of disabled adults in their family, which is not a protected class

under the plain language of § 3604(b) or the FHA's definition of familial status. *See* 42 U.S.C.

§ 3602(k)(1). Consequently, the McGraths' § 3604(b) claim fails. Accordingly, the Association

is entitled to summary judgment on the McGraths' § 3604(b) discrimination claim.

      To the extent the McGraths are in fact alleging a claim of discrimination under § 3604(b)

based on having children under the age of 18 in their household, their claim still fails. To prove a

claim under § 3604(b), the McGraths "must establish that the defendant had a discriminatory

intent or motive." *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,

576 U.S. 519, 524–25 (2015) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)).[4] This

---

[4] The McGraths could also potentially be alleging discrimination "on a modified disparate impact theory." *Bloch v. Frischholz*, 587 F.3d 771, 784 (7th Cir. 2009). However, "a disparate-impact claim challenges practices that have a 'disproportionately adverse effect on minorities' and are otherwise not justified by a legitimate rationale." *Texas Dep't of Hous.*, 576 U.S. at 524–25 (quoting *Ricci*, 557 U.S. at 577). "Disparate-impact analysis looks at the effects of policies, not one-off decisions, which are analyzed for disparate treatment." *City of Joliet v. New W., L.P.*, 825 F.3d 827, 830 (7th Cir. 2016). Here, there are no allegations or evidence that would support a disparate impact claim.

means that to survive summary judgment on their § 3604(b) claim, the McGraths must produce evidence that, when considered as a whole, would allow a reasonable jury to find that the Association treated them differently because they have children under the age of 18 living in their household. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (explaining, on a Title VII employment discrimination claim, that the record evidence "must be considered as a whole" to determine whether the plaintiff suffered an adverse employment action due to a protected characteristic); *Kormoczy v. Sec'y, U.S. Dep't of Hous. & Urb. Dev. ex rel. Briggs*, 53 F.3d 821, 823–24 (7th Cir. 1995) (explaining that the elements of FHA discrimination claims under § 3604 "follow closely the elements of employment discrimination").[5]

In the alternative, the McGraths can proceed under the familiar *McDonnell Douglas* burden shifting method to create an inference of discrimination on summary judgment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *East-Miller v. Lake Cnty. Highway Dep't*, 421 F.3d 558, 563 (7th Cir. 2005) (citing *Kormoczy*, 53 F.3d at 823–24). However, "plaintiff[s] need not use the *McDonnell Douglas* framework after *Ortiz*. At summary judgment, what matters is whether [the plaintiffs] presented enough evidence to allow the jury to find in [their] favor." *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957–58 (7th Cir. 2021) (cleaned up).

In this case, the McGraths do not appear to rely on the *McDonell Douglas* burden-shifting framework for their § 3604(b) claim. Under that framework modified for a claim of familial status discrimination, the McGraths would have to establish a prima facie case of housing discrimination by showing that they are members of a protected class, that they were

---

[5] To the extent the Association and the McGraths rely on the "convincing mosaic" test in their briefs, the Seventh Circuit in *Ortiz* expressly held that the test has no continuing viability. *See Ortiz*, 834 F.3d at 765 ("From now on, any decision of a district court that treats this phrase as a legal requirement . . . is subject to summary reversal . . . .").

similarly situated to members of the unprotected class, and that they were treated differently than members of the unprotected class. *Hatter v. Williams*, No. 17-2141, 2019 WL 11555274, a *5 (C.D. Ill. July 8, 2019), *aff'd* 844 F.3d App'x 870 (7th Cir. 2021) (quoting *Grubbs v. Hous. Auth. of Joliet*, No. 91 C 6454, 1997 WL 281297, at *16 (N.D. Ill. May 20, 1997)). If the McGraths meet each element of the prima facie case, the burden then shifts to the Association "to offer a nondiscriminatory justification for the challenged . . . action." *Groves v. S. Bend Cmty. Sch. Corp.*, 51 F.4th 766, 770 (7th Cir. 2022). The burden then shifts back to the McGraths to show the Association's "proffered nondiscriminatory reason amounted to pretext for discrimination." *Id*.

But even if they had relied on the *McDonnell Douglas* framework and despite five pages of their response brief referencing evidence they believe shows pretext, the McGraths do not say or show that they have individuals under the age of 18 living in their household, nor do they attempt to identify a similarly situated unit owner that did not have individuals under the age of 18 living in their household who was treated differently. Thus, the Court finds that the McGraths have not established a prima facie case under *McDonnell Douglas*.

Notably, under *McDonnell Douglas*, evidence of pretext "may, *together* with the elements of the prima facie case, suffice to show intentional discrimination" or lead to such an inference. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (emphasis added); *Runkel v. City of Springfield*, 51 F.4th 736, 744 (7th Cir. 2022) (citing *St. Mary's Honor Center* for the proposition that when the plaintiff establishes a prima facie case of discrimination, she needs to also offer evidence that the decisionmaker's reasons for the adverse action were pretextual to allow an inference that the true intent was discriminatory). But because the McGraths do not establish a prima facie case, even if they establish pretext, their pretext evidence alone does not

suffice to lead to an inference of intentional familial status discrimination under the *McDonnell Douglas* framework. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331–32 (7th Cir. 2002) ("Because Peele has failed to establish *prima facie* cases of sex and age discrimination, we need not address her pretext argument.").

Even considering the evidence as a whole under *Ortiz*, the § 3604(b) claim based on familial status discrimination still fails. Under *Ortiz*, the McGraths must show that the Association's "decision was motivated in part by an unlawful criterion" based on the McGraths having children under the age of 18 living in their household. *Runkel*, 51 F.4th at 742 (citing *Ortiz*, 834 F.3d at 765). Here, the McGraths' only relevant argument is that voting Association member Michael Hernandez's "reliance on a clearly inapplicable bylaw creates an inference that his claimed reliance thereon was pretext and, combined with his clear animus toward the McGrath children strongly supports the inference that his vote against the McGrath proposal . . . was based on discriminatory motives." Pl. Br. 12. The McGraths further explain, "Hernandez . . . referred to the [McGrath] children collectively, and it is therefore reasonable to infer that his animosity toward the children includes Tim and Martin." Pl. Br. 8.[6] However, as the Association

---

[6] The McGraths point to the following statements and conduct by Hernandez that they believe establishes his animosity toward the McGrath children. Hernandez has owned Unit 125 at Dunecrest since December 2013. Pl. Ex. 4, pp. 7–8, ECF No. 77-5. His unit has a metal gate between his deck and the McGraths' back deck. *Id*. at 164. He placed a large storage container in front of the gate "because [the McGrath family] kept coming through the patio." *Id*. at 164–66. This container served to block the McGrath family from using and getting onto his deck area, but ultimately Hernandez removed it. *Id*. at 166. He removed it because "it wasn't doing any good. They were still coming through." *Id*. at 167. At some point, Hernandez put a padlock on the gate. *Id*. The padlock "wasn't always locked. It looked like it was locked, but it wasn't locked." *Id*. He confirmed with counsel that currently there is a rubber band securing the gate closed, and he keeps the gate closed to keep the McGrath children from going on his deck. *Id*. at 168–69. Hernandez testified that he first found out about the McGraths' request for an extension of their balcony in 2015. *Id*. at 172. What upset him about their request was the fact that his deck was an egress for the McGraths that he was not informed about prior to purchasing his unit. *Id*. at 173. He was also upset that he was dragged into the fight about extending the McGraths' balcony. *Id*. At that time, he was already having issues with the McGrath family because they kept coming through his patio, and he was concerned about who was responsible if one of them falls. *Id*. at 173–74. To address this concern, Roy Plush told Hernandez to lock the gate; but then Janet Moran told him it needed to be unlocked, so he

21

highlights, Tim and Martin are the McGraths' adult children. Specifically, the record shows that Tim and Martin were over the age of 18 at the time of the Association's vote on the McGraths' proposed balcony extension on July 21, 2018 (as they were 26 years old as of February 28, 2022), and that they are disabled because of autism. Thus, the McGraths are connecting the statements by Hernandez only to their disabled adult children; the McGraths do not contend that there are children under the age of 18 living in their household to whom Hernandez was referencing. As a result, the Court finds that the McGraths have not developed an argument on how a decision by a voting Association member was motivated in part by the McGraths having children under the age of 18 living in their household.

Also, although the McGraths point to facts and details that they believe establish animus, pretext, suspicious timing, and violation of Association voting procedure, they do not cite any pertinent case law that supports finding an inference of discriminatory motive based on children under the age of 18 living in the McGrath household for any of those facts and details. Instead, the McGraths only cite *H.O.P.E., Inc. v. Lake Greenfield Homeowners Ass'n*, 330 F. Supp. 3d 1105, 1116 (N.D. Ill. 2018), and provide a narrative description of that case's facts and findings as well as block quotes. P1. Br. 4–6. Although the McGraths assert that "the facts of the instant case are strikingly similar to those in *H.O.P.E.*," they provide no analysis to explain how. *Id*. at 7. Even if they had, the McGraths are incorrect because although *H.O.P.E.* involves a § 3604(b) claim, that claim was based on racial discrimination, not familial status discrimination. Also, the plaintiffs in *H.O.P.E.* established both that they were part of a protected class and identified

---

unlocked it. *Id*. at 174. Hernandez said, "I didn't like the fact that [Mr. McGrath's] children were coming through the patio." *Id*. at 222. Hernandez testified that he tried to talk to Mr. McGrath about it, but his response was to say that those were not his children. *Id*. However, Hernandez confirmed, "I've seen [the McGrath children] sneaking through the patio . . . about six or seven, eight times . . . [but] [o]nce is too many." *Id*. at 223. Nevertheless, Hernandez testified, "I love kids." *Id*. at 222.

similarly situated comparators treated more favorably who were outside of their protected class, *see H.O.P.E.*, 330 F. Supp. 3d at 1115–16, but the McGraths do not attempt to show that they meet the definition of familial status or that other Dunecrest unit owners who were treated more favorably were outside of their protected class, mentioning only that other unit owners were "non-disabled," Pl. Br. 16. Thus, *H.O.P.E.* does not constitute persuasive legal authority in this case.

Consequently, any arguments on potential discrimination by the Association based on children under the age of 18 living in the McGraths' household are waived because the McGraths did not develop their arguments or cite pertinent legal authority on that issue. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."); *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel."). For the above reasons, the Court grants summary judgment in favor of the Association on the McGraths' familial status discrimination claim under § 3604(b).[7]

## C.    42 U.S.C. § 3617 Retaliation Claim

Under the FHA, it is illegal "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. Consequently, plaintiffs bringing a § 3617 claim must show such an adverse outcome, among other things. *See Bloch*, 587 F.3d at 783 (citing *East-Miller*, 421 F.3d at 563).[8] To establish an

---

[7] Thus, the Court need not address the Association's arguments on the statute of limitations made in its reply.

[8] To establish a claim for retaliation under § 3617 based on interference, the plaintiffs must establish: that (1) they are protected individuals under the FHA, (2) they were engaged in the exercise or enjoyment of

adverse outcome, the McGraths must "point to . . . conduct that a person of normal fortitude would view as coercive, intimidating, threatening, or interfering with the exercise of [their] protected right under the FHA." *Geraci v. Union Square Condo. Ass'n*, 891 F.3d 274, 277 (7th Cir. 2018). As "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm[,]" the McGraths must show conduct by the Association that produced an injury or harm involving a protected right under the FHA. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006); *see Geraci*, 891 F.3d at 277 (applying the reasonable person standard from *Burlington* to § 3617 retaliation claims). But the antiretaliation provision does not protect against "trivial harms." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.

Here, the Association argues that the retaliation claim under § 3617 fails because the McGraths have not established an adverse outcome. The McGraths contend that the Association retaliated against them for filing the instant action with a campaign of harassment. For the reasons set forth below, the Court agrees with the Association.

In this case, a reasonable jury could not find an adverse outcome. Rather than identifying evidence from which a reasonable factfinder could conclude that the McGraths experienced an adverse outcome, the McGraths point to three emails from the Association (1) stating a lien will be placed on the McGraths' condominium unit if they do not pay the special assessment that was

---

their fair housing rights, (3) the defendant coerced, threatened, intimidated, or interfered with the plaintiffs on account of their protected activity under the FHA, and (4) the defendant was motivated by an intent to discriminate. *Bloch*, 587 F.3d at 783 (citing *East-Miller*, 421 F.3d at 563); *see Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 868 (7th Cir. 2018) ("[The Seventh Circuit] [has] said that a claim under section 3617 requires showing intentional discrimination only when considering an interference claim."); *Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004) (defining interference as "a *pattern* of harassment, invidiously motivated"). To establish a claim for retaliation under § 3617 based on coercion, threat, or intimidation, "a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two." *Wetzel*, 901 F.3d at 868.

owed (sent August 13, 2021); (2) asking the McGraths to remove all outside anchors and bolts that they installed and to repair their electric garage door opener (sent September 21, 2021); and (3) attaching a report prohibiting grilling on decks less than ten feet from the exterior wall (sent October 6, 2022).

However, the McGraths do not point to any facts establishing the injury or harm that the emails produced. Although the McGraths say that if the prohibition in the grilling report were enforced, they would be unable to grill on their rear balcony/deck, the McGraths also say that they grill on their front balcony/deck. Moreover, the McGraths do not indicate that there was any further action taken by the Association against them after sending those three emails. Consequently, at most, the McGraths experienced trivial harm because the emails were inconvenient. Therefore, no person of normal fortitude would view the Association's sending of the three emails "as coercive, intimidating, threatening, or interfering with the exercise of [the McGraths'] protected right under the FHA." *Geraci*, 891 F.3d at 277.[9] Accordingly, the Court grants summary judgment in favor of the Association on the McGraths' retaliation claim under § 3617.

**D.    Individual Defendants**

The only remaining claims are the unlawful discrimination claims against the Individual Defendants based on their votes against the balcony extension. "[W]here one defendant files a motion for summary judgment which the court grants, the district court may sua sponte enter summary judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff had an adequate opportunity to argue in opposition to the motion." *Malak v. Associated*

---

[9] Thus, the Court need not address the parties' arguments on invidious motivation or causation.

*Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986). Here, the discrimination claims brought under the FHA against the Individual Defendants are interrelated with the discrimination claims against the Association because the allegations of discrimination against the Association are based on the statements and conduct of the Individual Defendants that are also the basis of the discrimination claims against the Individual Defendants. Accordingly, because the Court has granted summary judgment in favor of the Association on all claims against it and the McGraths submitted evidence arguing in opposition to the Association's motion for summary judgment, the Court sua sponte grants summary judgment in favor of the Individual Defendants.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS the Defendant Dunecrest Condominium Association's Second Motion for Summary Judgment [ECF No. 72] and GRANTS summary judgment in favor of the Individual Defendants sua sponte. The Court DIRECTS the Clerk of Court to enter judgment against Plaintiffs Michael McGrath, Jill McGrath, Tim McGrath, Martin McGrath, Colin McGrath, and CM McGrath and in favor of Defendants Dunecrest Condominium Association, Holly Candella, Ruth Palonis, Michael Hernandez, and Janet Moran. The Plaintiffs take nothing by their Third Amended Complaint. The Court DENIES as moot the Individual Defendants' Motion for Discovery [ECF No. 67].

SO ORDERED on May 23, 2024.

 s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT