**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

MICHAEL MCGRATH, JILL MCGRATH,
TIM MCGRATH, MARTIN MCGRATH,
COLIN MCGRATH, and CM MCGRATH,

Plaintiffs,

v.                                                                CAUSE NO.: 3:20-CV-656-TLS-MGG

DUNECREST CONDOMINIUM
ASSOCIATION, HOLLY CANDELLA,
RUTH PALONIS, MICHAEL
HERNANDEZ, and JANET MORAN,

Defendants.

**OPINION AND ORDER**

Michael and Jill McGrath bought a condominium in the Dunecrest Condominium

development in Michigan City, Indiana, in 2009 as a vacation home. When the Defendant

Dunecrest Condominium Association (the Association) did not approve their proposal for a

balcony extension in 2018, Michael and Jill McGrath and four of their children (collectively, the

McGraths)—Tim, Martin, Colin, and CM McGrath—sued the Association in this Court,

eventually also bringing claims against four Dunecrest Condominium owners, Defendants Holly

Candella, Ruth Palonis, Michael Hernandez, and Janet Moran (collectively, the Individual

Defendants). Later, the Court granted summary judgment on all claims in favor of the

Association and the Individual Defendants and against the McGraths. This matter is before the

Court on: (1) Defendant Dunecrest Condominium Association's Verified Motion for Attorney's

Fees [ECF No. 91]; and (2) Holly Candella, Ruth Palonis, Michael Hernandez, and Janet

Moran's Verified Motion for Attorney's Fees [ECF No. 93]. These motions are fully briefed and

ripe for ruling.

## PROCEDURAL BACKGROUND

The McGraths amended their Complaint three times, ultimately alleging in their Third Amended Complaint [ECF No. 50] that, under the Fair Housing Act, also known as Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601, et seq., the Association: (1) failed to accommodate their proposed balcony extension (Count I), which was necessary for their adult autistic children—Plaintiffs Tim and Martin McGrath; (2) denied the proposed balcony extension on the basis of familial status discrimination (Count II); and (3) retaliated against the McGraths for filing the instant lawsuit (Count III). The McGraths also added the Individual Defendants, alleging that the Individual Defendants discriminated against them by voting against the proposed balcony extension (Counts IV–VII).

As relevant to the Court's analysis below, the McGraths first alleged: (1) the failure to accommodate claim (Count I) in the original Complaint (containing 88 paragraphs) filed on July 16, 2020, Compl., pp. 11–12, ECF No. 1; (2) the familial status discrimination claim (Count II) in the Second Amended Complaint (containing 75 paragraphs) filed on May 13, 2021, Second Am. Compl., pp. 15–16, ECF No. 30; and (3) the retaliation claim (Count III) in the operative Third Amended Complaint (containing 143 paragraphs) filed on August 5, 2022, Third Am. Compl., pp. 16–20, ECF No. 50.

Additionally, the Association filed a Motion to Dismiss [ECF No. 17], on October 12, 2020, arguing among other things for dismissal of the McGraths' First Amended Complaint based on failure to state a claim. *See* ECF No. 18. The McGraths did not respond to the motion. Instead, on October 28, 2020, they filed a Motion for Leave to File Their Second Amended Complaint [ECF No. 24]. In support, the McGraths merely stated, "Rather than file briefs in defense of the original Complaint, Plaintiffs prefer to simply amend the Complaint to address the arguments made in Defendant's motion to dismiss." *Id.* ¶ 5. However, the McGraths failed to

attach the proposed second amended complaint to their motion. The Association filed a response [ECF No. 25] noting that failure. Then the McGraths filed a reply [ECF No. 26] attaching the proposed second amended complaint [ECF No. 26-1]. The Court granted the Association leave to file a sur-reply to address the proposed second amended complaint. ECF No. 27. In the sur-reply, the Association asserted that the McGraths' proposed second amended complaint was futile and asked the Court to deny leave to amend and dismiss the McGraths' pending claims. ECF No. 28.

On May 13, 2021, then-presiding District Court Judge Jon E. DeGuilio entered an Opinion and Order on the McGraths Motion for Leave, as is relevant here, granting the McGraths leave to amend their Fair Housing Act claims. May 13, 2021 Op. & Ord., ECF No. 29. Judge DeGuilio held that "the McGraths' proposed second amended complaint is not futile with regard to the FHA claims." *Id.*, p. 13. In that Order, he also denied the Association's Motion to Dismiss as moot. *See id*. Subsequently, the McGraths filed their Second Amended Complaint. ECF No. 30.

On January 24, 2022, the McGraths filed a Motion for Leave to File Third Amended Complaint [ECF No. 39], requesting leave to amend the second amended complaint to add a claim for retaliation and the claims against the Individual Defendants. The Association filed a response [ECF No. 40], to which the McGraths filed a reply [ECF No. 41]. On August 3, 2022, Magistrate Judge Michael G. Gotsch, Sr. granted the McGraths' Motion for Leave to File a Third Amended Complaint, and the McGraths filed the Third Amended Complaint shortly thereafter. *See* ECF No. 50.

On March 31, 2022, the Association filed its first Motion for Summary Judgment [ECF No. 42], to which the McGraths filed a response [ECF No. 45] and the Association filed a reply [ECF No. 46]. However, the Court denied the Association's first Motion for Summary Judgment,

which was based on the McGraths' Second Amended Complaint, as moot in light of the McGraths' filing the Third Amended Complaint containing new counts. *See* ECF No. 58.

On June 2, 2023, the Association filed a Second Motion for Summary Judgment [ECF No. 72]. The McGraths filed a response [ECF No. 77] including a statement of additional material facts [ECF No. 77-45] containing an additional 163 paragraphs. Then the Association filed a reply [ECF No. 78] including a response to the McGraths' statement of additional material facts [ECF No. 79].

On July 17, 2023, Chief Judge Holly A. Brady entered an Order directing the Clerk of Court to reassign this case to the undersigned as the presiding district court judge for all further proceedings. *See* ECF No. 80.

On May 23, 2024, the Court entered an Opinion and Order [ECF No. 87] on Defendant Dunecrest Condominium Association's Second Motion for Summary Judgment [ECF No. 72]. As relevant to the Court's analysis of the McGraths' discrimination claim (Count I) in the summary judgment ruling, the Court sustained the Association's evidentiary objections. *See* May 23, 2024 Op. & Ord. 3, ECF No. 87. The Court stated:

> The Association raises objections to the opinions of Erik Emmick, Laura Hartwell, and Katie Kusnik that are used by the McGraths in their attempt to show that the proposed balcony extension with stairs is a necessary accommodation for Tim and Martin's autism. The Court sustains the Association's objections on the grounds of lack of personal knowledge. This is because of the following: (1) Emmick did not mention the proposed balcony extension or secondary exit in his letter, and he testified that he has not seen the proposed balcony extension, has not been to the McGraths' condominium, and does not know how many exits their condominium has; (2) Hartwell testified that she has not seen the proposed balcony extension, has not been to the McGraths' condominium, and does not know Tim and Martin's exit preferences yet considers such information important to know before expressing an opinion on the secondary exit; and (3) although Kusnik had worked with Tim and Martin from 2009 through 2012, there is no indication that she had worked with them in the six years before the McGraths' proposed the balcony extension was submitted to the Association in 2018. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

The Court also excludes the statements by Kusnik because it appears that the McGraths are attempting to use them as a form of expert witness testimony on accommodations for Tim and Martin in relation to their autism without having made any of the requisite expert discovery disclosures under Federal Rule of Civil Procedure 26 and without justifying the nondisclosures.

. . .

To the extent that in their responsive brief, other than with the conclusory assertation that Emmick and Hartwell have knowledge related to Tim and Martin's disability, the McGraths did not respond to the Association's objections to the opinions of Emmick and Hartwell, any such arguments are waived.

*Id*., pp. 3–5 (cleaned up).

In ruling on the McGraths' claim under 42 U.S.C. § 3604(f)(2) for disability discrimination as defined by § 3604(f)(3)(B) as a failure to accommodate (Count I), the Court recognized that the claim "requires a showing that [the accommodation]is 'necessary,' which is 'essentially . . . a causation inquiry.'" May 23, 2024 Op. & Ord. 12 (citation omitted). The Court explained:

The § 3604(f)(3)(B) causation requirement comes from the linking of the "necessary" and "equal opportunity" elements of the failure to accommodate legal standard and acts as a limit on a defendant's accommodation duty. As a result, not every rule that creates a general inconvenience or expense to the disabled needs to be modified. The statute requires only accommodations necessary to ameliorate the effect of the plaintiff's disability so that he may compete equally with the non-disabled in the housing market. To enforce this limitation, the Court asks whether the rule in question, if left unmodified, hurts handicapped people *by reason of their handicap*, rather than by virtue of what they have in common with other people.

In conducting the causation inquiry, the Court determines whether but for his handicap, the plaintiff would have been able to access the services or benefits desired. A proposed accommodation is required when it directly addresses *the needs created by the handicaps*. Examples of required accommodations include the blind woman who obtains an exemption from a 'no pets' policy for her seeing eye dog, or the paraplegic granted special permission to live on a first floor apartment because he cannot climb the stairs. However, a defendant does not have a duty to accommodate a proposed modification when it goes beyond addressing those needs and starts addressing problems *not caused* by a person's handicap. A proposed modification addresses a problem not caused by a person's handicap when the problem affects anyone living in a dwelling, not just handicapped people.

5

*Id.*, pp. 12–14 (cleaned up). The Court concluded that the McGraths failed to "argue that Tim and Martin's autism was the but-for cause of their need for the proposed balcony extension with a staircase." *Id.*, p. 14. The Court also concluded that "the facts [would not] support such an argument." *Id*.

The Court provided the following analysis:

> Although the McGraths establish that autism causes Tim and Martin's need to pace and Martin's need for a feeding tube, the testimony of Michael McGrath and Jill McGrath reveals that the proposed balcony extension would merely provide *additional* room for Tim and Martin's pacing and for feeding Martin by his feeding tube. Their testimony also reveals that Tim and Martin already pace and Martin is already fed by a feeding tube inside the condominium unit without the proposed extension. To the extent the McGraths attempt to rely on the opinions of Erik Emmic, Laura Hartwell, and Katie Kusnik to establish Tim and Martin's needs, they are inadmissible for the reasons set forth in the Objections section above.

> Additionally, the reasons the McGraths give for needing the proposed balcony extension address problems that affect anyone living in the McGraths' condominium unit. As the Association highlights, the reasons for the proposed balcony extension—that the McGraths provided in their June 18, 2018 email proposal to the Association—were to have another exit point that addresses the McGraths' safety concern, ease wear and tear on the interior of their hallway, and provide more space for outdoor grilling.

> Moreover, in their response brief, the McGraths state that their current secondary exit is controlled by another unit owner in that he either keeps the gate to it locked or places a lock on the gate in a manner which gives the appearance that the gate is locked (thus the McGraths are not free to come and go from this exit). According to the McGraths, this is problematic because in case of an emergency, such as a fire, they cannot rely on the availability of the secondary exit. Another reason the McGraths give is that if the back area of their unit was impacted by an emergency such as a fire or tornado, it shares a common wall with the common stairway that they primarily use to enter and exit the building; thus, if the McGraths' primary exit from their condominium unit was blocked by a natural disaster, they would be trapped in their unit. The McGraths also say that they cannot leisurely leave the condominium unit to go to the beach or return to their primary residence in Illinois by a secondary exit.

> Similar to the water shut off in *Good Shepherd*, the unreliable second exit, wear and tear on the hallway, lack of space for grilling, entrapment in the unit if their primary exit was blocked, and no second exit to leisurely leave their unit are problems that are too attenuated from Tim and Martin's disability because the

problems affect *anyone* living in the McGraths' condominium unit, not just those living with autism.

Therefore, even when viewing the evidence in the light most favorable to them, the McGraths fail to create a genuine dispute of material fact that Tim and Martin's autism is the but-for cause of their need for the proposed balcony extension and stairs. Accordingly, the Association is entitled to summary judgment on the McGraths' § 3604(f)(2) discrimination claim because the McGraths cannot establish that they were discriminated against as defined by § 3604(f)(3)(B). Thus, the Court need not consider the McGraths' additional arguments on statements and conduct evidencing discriminatory animus, pretext, suspicious timing, or Robert's Rules of Order.

*Id.*, pp. 14–16 (cleaned up).[1]

For the McGraths' familial status claim (Count II), as set forth in Court's summary judgment ruling, "[u]nder § 3604(b), the FHA makes it unlawful '[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.'" May 23, 2024 Op. & Ord., p. 16 (citation omitted). To support such a claim, the Court determined that the McGraths were required to establish "familial status," which the FHA defines as "one or more individuals (who have not attained the age of 18 years) being domiciled with . . . a parent or another person having legal custody of such individual or individuals." *Id.*, pp. 16–17 (citation omitted).

---

[1] As for *Good Shepard*, the Court explained in its summary judgment ruling that

in *Good Shepherd*, the defendant city cut off water service to the plaintiff group home's lot. In that case, the plaintiff argued that by not supplying their lot with water and sewage, the city harmed the disabled adults by preventing them from living in the group homes. That plaintiff contended that the harm was by reason of their disability because the potential residents were denied the benefit they, as developmentally disabled adults, receive from group living. The *Good Shepherd* court concluded that the plaintiff's reasoning was too attenuated because cutting off water prevents *anyone* from living in a dwelling, not just handicapped people, and therefore the prohibitions found in the FHA do not apply to the case. The lack of accommodation argument by the plaintiff in *Good Shepherd* therefore failed because the residents' disabilities did not deny them an equal opportunity to obtain housing.

May 23, 2024 Op. & Ord., p. 14 (cleaned up).

However, the Court concluded that the McGraths were instead proceeding solely on a theory of liability based on the presence of disabled adults in their family:

> The Association argues that the McGraths do not specifically identify a statutory basis for their discrimination claims in the Third Amended Complaint. As the Association points out, the McGraths allege that "the failure of the Association to provide a prompt response to the McGrath family request for the deck extension with stairs, following a majority vote in support of the project, is evidence of the Association's animus and discriminatory conduct *towards a family with disabled family members*." Also, the McGraths "claim in the alternative, the . . . unit owners who . . . subsequently changed their position and voted against the McGrath's request for a reasonable accommodation, was based upon those Association members discriminatory animus *against the McGrath familial status, specifically the disabled individuals in the McGrath family*." Thus, the McGraths base their theory of the Association's liability under § 3604(b) on the presence not of individuals under the age of 18 in the household but of the disabled individuals in their family—their autistic adult children Tim and Martin, which the McGraths refer to as "familial status."

*Id.*, p. 17 (cleaned up).

The Court arrived at this conclusion because

> the plain language of § 3604(b) does not provide a remedy for discrimination based on a family with disabled adults. In their response brief, the McGraths contend that "the overwhelming evidence supports an inference that at least one of the discriminatory motives was based on either or both the McGraths' familial status and the disability status of Tim and Martin." But the McGraths do not explain in their Third Amended Complaint or in their response brief how they meet the FHA's definition of familial status, which only includes families with individuals under the age of 18 living in a household, not families with disabled adults living in a household. As the Association points out in its reply brief, the "McGraths did not articulate the basis for discrimination but cite to § 3604(b) and refer to vague comments about the size of their family and the behavior of their adult children."

*Id.*, pp. 17–18 (cleaned up). Thus, the Court held that "the McGraths are proceeding solely on a theory of liability based on the presence of disabled adults in their family, which is not a protected class under the plain language of § 3604(b) or the FHA's definition of familial status. Consequently, the McGraths' § 3604(b) claim fails." *Id.*, p. 18 (cleaned up).

The Court further concluded that, even had the McGraths "alleg[ed] a claim of discrimination under § 3604(b) based on having children under the age of 18 in their household,

their claim still fails." *Id.*, p. 18. This was because "[t]o prove a claim under § 3604(b), the McGraths 'must establish that the defendant had a discriminatory intent or motive.'" *Id.* (citation omitted). The Court recognized that "the McGraths [could] proceed under the familiar *McDonnell Douglas* burden shifting method to create an inference of discrimination on summary judgment." *Id.*, p. 19 (citations omitted). The Court explained:

> Under that framework modified for a claim of familial status discrimination, the McGraths would have to establish a prima facie case of housing discrimination by showing that they are members of a protected class, that they were similarly situated to members of the unprotected class, and that they were treated differently than members of the unprotected class. If the McGraths meet each element of the prima facie case, the burden then shifts to the Association to offer a nondiscriminatory justification for the challenged action. The burden then shifts back to the McGraths to show the Association's proffered nondiscriminatory reason amounted to pretext for discrimination. *Id.*

*Id.*, pp. 19–20 (cleaned up). However, the Court concluded that

> even if they had relied on the *McDonnell Douglas* framework and despite five pages of their response brief referencing evidence they believe shows pretext, the McGraths do not say or show that they have individuals under the age of 18 living in their household, nor do they attempt to identify a similarly situated unit owner that did not have individuals under the age of 18 living in their household who was treated differently. Thus, the Court finds that the McGraths have not established a prima facie case under *McDonnell Douglas*.

> Notably, under *McDonnell Douglas*, evidence of pretext may, *together* with the elements of the prima facie case, suffice to show intentional discrimination or lead to such an inference. But because the McGraths do not establish a prima facie case, even if they establish pretext, their pretext evidence alone does not suffice to lead to an inference of intentional familial status discrimination under the *McDonnell Douglas* framework.

*Id.*, pp. 20–21 (cleaned up).

The Court also said that the McGraths could alternatively proceed under *Ortiz* by "produc[ing] evidence that, when considered as a whole, would allow a reasonable jury to find that the Association treated them differently because they have children under the age of 18 living in their household." *Id.*, p. 19 (citations omitted). Under the *Ortiz* standard, the McGraths

were required to establish that the Association's "decision was motivated in part by an unlawful criterion based on the McGraths having children under the age of 18 living in their household." *Id.*, p. 21. (citations omitted). However, the Court concluded that "the § 3604(b) claim based on familial status discrimination still fails." *Id*. The Court explained that this was because

> the McGraths' only relevant argument is that voting Association member Michael Hernandez's "reliance on a clearly inapplicable bylaw creates an inference that his claimed reliance thereon was pretext and, combined with his clear animus toward the McGrath children strongly supports the inference that his vote against the McGrath proposal was based on discriminatory motives". The McGraths further explain, "Hernandez referred to the McGrath children collectively, and it is therefore reasonable to infer that his animosity toward the children includes Tim and Martin." However, as the Association highlights, Tim and Martin are the McGraths' adult children. Specifically, the record shows that Tim and Martin were over the age of 18 at the time of the Association's vote on the McGraths' proposed balcony extension on July 21, 2018 (as they were 26 years old as of February 28, 2022), and that they are disabled because of autism. Thus, the McGraths are connecting the statements by Hernandez only to their disabled adult children; the McGraths do not contend that there are children under the age of 18 living in their household to whom Hernandez was referencing. As a result, the Court finds that the McGraths have not developed an argument on how a decision by a voting Association member was motivated in part by the McGraths having children under the age of 18 living in their household.

> Also, although the McGraths point to facts and details that they believe establish animus, pretext, suspicious timing, and violation of Association voting procedure, they do not cite any pertinent case law that supports finding an inference of discriminatory motive based on children under the age of 18 living in the McGrath household for any of those facts and details. Instead, the McGraths only cite *H.O.P.E., Inc. v. Lake Greenfield Homeowners Ass'n*, 330 F. Supp. 3d 1105, 1116 (N.D. Ill. 2018), and provide a narrative description of that case's facts and findings as well as block quotes. Although the McGraths assert that the facts of the instant case are strikingly similar to those in *H.O.P.E.*, they provide no analysis to explain how. Even if they had, the McGraths are incorrect because although *H.O.P.E.* involves a § 3604(b) claim, that claim was based on racial discrimination, not familial status discrimination. Also, the plaintiffs in *H.O.P.E.* established both that they were part of a protected class and identified similarly situated comparators treated more favorably who were outside of their protected class, but the McGraths do not attempt to show that they meet the definition of familial status or that other Dunecrest unit owners who were treated more favorably were outside of their protected class, mentioning only that other unit owners were non-disabled. Thus, *H.O.P.E.* does not constitute persuasive legal authority in this case.

> Consequently, any arguments on potential discrimination by the Association based on children under the age of 18 living in the McGraths' household are waived because the McGraths did not develop their arguments or cite pertinent legal authority on that issue. For the above reasons, the Court grants summary judgment in favor of the Association on the McGraths' familial status discrimination claim under § 3604(b).

*Id.*, pp. 21–23 (cleaned up).

Finally, as to the McGraths' retaliation claim (Count III), the Court stated that the McGraths were required to "point to . . . conduct that a person of normal fortitude would view as coercive, intimidating, threatening, or interfering with the exercise of [their] protected right under the FHA." May 23, 2024 Op. & Ord., p. 24 (citation omitted). As stated in the ruling, the McGraths failed to do so because their assertion of a campaign of harassment based on three emails was not supported by the evidence. The emails addressed a lien that was to be placed on the McGraths' condominium unit if they did not pay the special assessment that was owed related to the costs of this litigation (sent August 13, 2021), asked the McGraths to remove all outside anchors and bolts that they installed and to repair their electric garage door opener (sent September 21, 2021), and forwarded a report prohibiting grilling on decks less than ten feet from the exterior wall (sent October 6, 2022). The Court explained:

> Although the McGraths say that if the prohibition in the grilling report were enforced, they would be unable to grill on their rear balcony/deck, the McGraths also say that they grill on their front balcony/deck. Moreover, the McGraths do not indicate that there was any further action taken by the Association against them after sending those three emails. Consequently, at most, the McGraths experienced trivial harm because the emails were inconvenient.

*Id.*, pp. 24–25. As a result, the Court concluded that "no person of normal fortitude would view the Association's sending of the three emails 'as coercive, intimidating, threatening, or interfering with the exercise of [the McGraths'] protected right under the FHA.'" *Id.*, p. 25 (citation omitted).

As for the claims that the McGraths alleged against the Individual Defendants, in its summary judgment ruling, the Court said:

> The only remaining claims are the unlawful discrimination claims against the Individual Defendants based on their votes against the balcony extension. "Where one defendant files a motion for summary judgment which the court grants, the district court may sua sponte enter summary judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff had an adequate opportunity to argue in opposition to the motion." Here, the discrimination claims brought under the FHA against the Individual Defendants are interrelated with the discrimination claims against the Association because the allegations of discrimination against the Association are based on the statements and conduct of the Individual Defendants that are also the basis of the discrimination claims against the Individual Defendants. Accordingly, because the Court has granted summary judgment in favor of the Association on all claims against it and the McGraths submitted evidence arguing in opposition to the Association's motion for summary judgment, the Court sua sponte grants summary judgment in favor of the Individual Defendants.

*Id.*, p. 26 (cleaned up).

Thus, in the summary judgment ruling, the Court granted the Defendant Dunecrest Condominium Association's Second Motion for Summary Judgment and the Court granted summary judgment in favor of the Individual Defendants sua sponte. ECF No. 72. The Court also directed the Clerk of Court to enter judgment against Plaintiffs Michael McGrath, Jill McGrath, Tim McGrath, Martin McGrath, Colin McGrath, and CM McGrath and in favor of Defendants Dunecrest Condominium Association, Holly Candella, Ruth Palonis, Michael Hernandez, and Janet Moran. *See id*.

On May 23, 2024, the Clerk of Court entered judgment in favor of Defendants Dunecrest Dunecrest Condominium Association, Holly Candella, Ruth Palonis, Michael Hernandez, and Janet Moran and against Plaintiffs Michael McGrath, Jill McGrath, Tim McGrath, Martin McGrath, Colin McGrath, and CM McGrath. ECF No. 88.

On June 5, 2024, the Association filed its Verified Motion for Attorney's Fees [ECF No. 91]. The McGraths filed a response [ECF No. 94], and the Association filed a reply [ECF No. 98]. On June 17, 2024 the Individual Defendants filed their Verified Motion for Attorney's Fees [ECF No. 93]. The McGraths filed a response [ECF No. 100], and the Individual Defendants filed a reply [ECF No. 101].

## ANALYSIS

**A.    Defendant Dunecrest Condominium Association's Motion for Attorneys' Fees**

The Association seeks attorneys' fees in the amount of $86,562.50. The Association argues that before the complaint in this case was filed, the evidence and pertinent legal authority showed that the McGraths could not establish: (1) a prima facia case for a disability discrimination claim as defined by a failure to accommodate (Count I); (2) a proper basis for a claim under 42 U.S.C. § 3604(b) or a prima facia case for familial status discrimination if based on such (Count II); and (3) a claim for retaliation (Count III). The Association also argues that its requested attorneys' fees are reasonable. The Court addresses each argument in turn below.

*1.    Evidence Before the Complaint and Amended Complaints Were Filed*

Pursuant to the FHA, "a court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). "[T]o be a 'prevailing party,' a litigant must have obtained a judgment on the merits, a consent decree, or some other judicially sanctioned change in the legal relationship of the parties." *Palmetto Properties, Inc. v. County of DuPage*, 375 F.3d 542, 548 (7th Cir. 2004) (citation omitted). In this case, the Defendant Association obtained a judgment on the merits when the McGraths' claims were resolved against them on the Association's motion for summary judgment, and so the Defendant Association is the prevailing party.

Because the standards for awarding fees under 42 U.S.C. § 1988 "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party,'" the § 1988 standard for awarding fees to a prevailing defendant applies here. *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983); *see Palmetto Properties, Inc.*, 375 F.3d at 547. Under § 1988, a prevailing defendant "may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Hensley*, 461 U.S. at 429 & n.2 (citing H.R. Rep. No. 94–1558, pp. 1, 7 (1976)). The Seventh Circuit Court of Appeals has interpreted this to mean that "when a civil rights suit is lacking in any legal or factual basis, an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation." *Coates v. Bechtel*, 811 F.2d 1045, 1050 (7th Cir. 1987) (cleaned up). That is "a district court may in its discretion award attorney's fees to a prevailing defendant . . . upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

This strict standard serves to not add risk to filing suit or prevent plaintiffs from vindicating their rights:

> [A]ssessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII. Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

14

*Id.* at 422. "Although a ruling on a motion for summary judgment is not conclusive proof of the frivolous nature of a litigant's case, it is a relevant consideration." *Apuri v. Parkview Health Sys., Inc.*, No. 1:16-CV-363, 2020 WL 401886, at *5 (N.D. Ind. Jan. 23, 2020).

To decide whether the McGraths' claims are frivolous, unreasonable, or groundless, the Court must examine their claims and the facts forming the basis for them filing suit. *See Kennedy v. McCarty*, 803 F. Supp. 1470, 1474 (S.D. Ind. 1992) ("The court must focus not on the facts ultimately determined, but on the plaintiff's version of the facts forming the basis for the suit."); *Clark v. Oakhill Condo. Ass'n, Inc.*, No. 3:08-CV-283, 2011 WL 1296719, at *4 (N.D. Ind. Mar. 31, 2011) ("To decide whether the Clarks' claims were frivolous, unreasonable, or groundless, the court must examine their claims and their basis for filing suit."). Claims are frivolous, unreasonable, or groundless when in "[v]iewing the record as it appeared before [the McGraths] filed their complaint, the [C]ourt concludes that the [] claims . . . were without foundation— without factual or legal support." *Clark*, 2011 WL 1296719, at *6.

In this case, the Association seeks attorneys' fees from the time that the McGraths initially filed their complaint. The McGraths argue against attorneys' fees from the time of the filing of their complaint through discovery "because this Court previously determined that a sufficient basis existed for Plaintiffs' claims, and thus Plaintiffs necessarily had to be allowed to proceed through discovery to develop evidentiary support for those claims." Pl. Ass'n Att'y Fee Resp. 8, ECF No. 94. In support of their argument, the McGraths cite (multiple times) Judge DeGuilio's May 13, 2021 Order granting the McGraths' motion for leave to amend their first amended complaint.

However, as argued by the Association, Judge DeGuilio did not apply the standard applicable here on the motion for attorneys' fees of whether the McGraths' claims were frivolous, unreasonable, or groundless at the outset based on the evidence contained in the record

15

in support of the claims before the complaint was filed. And, the McGraths do not refer to this applicable standard with their arguments relying on Judge DeGuilio's ruling. Nor do they develop a corresponding argument in the context of that standard. Plus, the McGraths provide no citation to pertinent legal authority supporting the proposition that, when a defendant wins summary judgment, a court's granting a motion for leave to amend is a sufficient basis to deny a motion for attorneys' fees by that defendant. Thus, the Court finds the McGraths' arguments that Judge DeGuilio's ruling is a basis for denying the Association's request for attorneys' fees— from the time they initially filed their complaint through discovery—unpersuasive.

The Court now examines the merits of the McGraths' case to determine if the claims were frivolous, unreasonable, or groundless under the applicable standard on this motion for attorney fees. Because "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events,'" *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (cleaned up) (citing *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)), "the Court concludes that [the McGrath's] summary judgment filings represent [their] best evidence, and therefore the best place to go in determining the merits of [their] case," viewing that evidence as it appeared before the McGraths filed their complaint, *Apuri*, 2020 WL 401886, at *5.

The McGraths' evidence as taken directly from the Court's summary judgment ruling shows the following:

*Background Facts*

- In 2009, Michael and Jill McGrath purchased their unit in Dunecrest, which is located on the second floor;
- Since that time, the McGraths have used their condominium as a weekend home; their primary residence is in Evergreen Park, Illinois;
- Plaintiffs Collin McGrath, CM McGrath, Tim McGrath, and Martin McGrath are Michael and Jill McGrath's children who live with them;
- Tim and Martin McGrath are adults living with autism;

16

- At Dunecrest, the main entrance is currently the McGraths' only reliable method of entering and exiting their condominium;
- This is because, for the McGraths to exit the property through the secondary rear exit, they must exit onto their back deck, pass through a gate that is closed and/or locked and onto the rear deck of the unit presently owned by their neighbor—Defendant Michael Hernandez, cross over Hernandez's deck, and then exit his deck through another locked gate to get to the common area;
- Also, the back outside area of their condominium unit is otherwise surrounded by a tall retaining wall;
- Should the area around the primary exit be engulfed by fire or made inaccessible by some natural disaster, the McGraths would have no reliable way of getting out of their unit;
- The balcony that is the subject of the McGraths' proposed extension with a staircase is the lower balcony in the picture below:



*Failure to Accommodate Claim (Count I)*

- In 2018, the McGraths proposed extending their side balcony and adding a staircase to the balcony, in part, to have a reliable secondary exit;
- Plaintiffs Tim and Martin McGrath are identical twins who were diagnosed with autism when they were 28 months old;
- Jill McGrath testified that Tim and Martin pace constantly because of their autism.
- She also said that Tim and Martin's autism was "definitely made part of the reason why we needed a more reliable secondary exit . . . and . . . personally I wanted . . . another three feet [added to the balcony] so I could put a little bigger table out there so I could help [feed] [Martin]. He's got a feeding tube.";

- She also said, "[Tim and Martin] could pace a little bit out there . . . . It's literally just asking for a little bit more space for enjoyment for the family and a reliable exit.";
- And, Michael McGrath testified that the proposed balcony extension "would allow Marty from instead of going from the kitchen to the glass door, turning around, going back into the kitchen to the glass door in the condo, he would then be able . . . to pace on the deck or go around, a little more room.";
- He also testified, "Tim does the same thing, is all I can say.";
- Although Michael McGrath first proposed a balcony extension to the Association in 2013, he did not ultimately receive a favorable bid from a builder until Spring 2018 when he received one from Deck Masters;
- On June 18, 2018, he sent an email to the Association members stating the McGraths' reasons for their proposed balcony extension, which were to have another exit point that addresses their safety concern, prevent wear and tear on the interior of their hallway, and space for outdoor grilling, and on June 25, 2018, he sent a copy of the bid to the Association members;
- The proposed balcony extension was for an eight-foot extension of the existing balcony along the side of the unit towards the rear with stairs leading to the ground;
- On June 21, 2018, Michael McGrath sent another email to the Association members in response to questions;
- He reiterated the reasons for the proposed balcony extension, stating that "[f]irst and foremost, safety of my family, having a second exit in event of an emergency, fire, tornado, what have you.";
- He also mentioned, "As everyone know[s], we have two adult sons with special needs. In the event of an emergency we need to make sure they have more than one option of getting out safely.";
- As a result of the McGraths' emails, the Association called a special meeting, which took place on July 21, 2018, for the sole purpose of voting on whether to approve the balcony extension and stairs proposed by the McGraths;
- The Association minutes for that meeting reflect that it was attended by North Building owners Hernandez, Palonis, Michael and Jill McGrath, and Moran and South Building owners Holly and Frank Candella, Plush, Freeman, and Konstantinopoulos;
- For voting on the McGrath proposed balcony extension, Plush, Freeman, Konstantinopoulos, and McGrath were "yes" votes, while Moran was a "yes" vote conditioned on the installation of security shutters, and Palonis, Candella, and Hernandez were "no" votes;
- On July 22, 2018, Moran advised the homeowners by email that her vote was a "no."

*Familial Status Discrimination Claim (Count II)*

- Plaintiffs Tim and Martin McGrath are identical twins who were diagnosed with autism when they were 28 months old;
- As of February 28, 2022, Tim and Martin McGrath were 26 years of age;

*Retaliation Claim (Count III)*

- After the McGraths filed the instant lawsuit on July 16, 2020, the Association sent the McGraths three emails via Defendant Candella;
- On August 13, 2021, Defendant Candella sent an email to Michael McGrath, stating: Your special assessments have not yet been paid. They were due July 30, 2021. Per bylaws, the Association will be placing a lien on the properties effected[sic] should the assessments not be paid. How far do you want to take this Mike? You were granted stairs for the safety of your children. You were granted a walk-around like that of others. You failed to act;
- On September 20, 2021, Defendant Candella sent another email to Michael McGrath, stating:
  Mike; In an effort to respect compliance of Association Bylaws and Dec. of Horizontal Property, the board is asking that you comply with the following:
  • Please remove all anchors, bolts, etc. attached to the outside of building that you have installed and repair and paint holes. This is asso. property. Janet and Roy have asked you to do so on separate occasions in the past.
  • Please repair electric garage door opener as it is a security issue;
- On October 6, 2022, Candella advised the Association that she met with Michigan City Fire Marshal Bruder on September 1, 2022;
- She also emailed the agenda for the October 8, 2022 Association fall meeting to all unit owners;
- The email included a document titled "Dunecrest Fire Marshal Report" dated September 1, 2022, which was attached as a separate document to the agenda;
- The "Fire Marshal Report" contained items from the Michigan City Fire Marshal Bruder;
- The report specified that there is to be no grilling on balconies and the owner can be cited and that there is to be no heat producing appliance outdoors 10 feet from the exterior wall;
- If the statements contained in the Fire Marshal Report were true and accurate findings of the Fire Marshal, the McGrath family, and only the McGrath family, would be prohibited from outdoor grilling, due to the size of their rear deck—which is smaller than the rear deck of all other units;
- Based on Michael McGrath's observations during the years that he has owned Unit 121, all unit owners who engage in the practice of outdoor grilling do so using the rear deck/balcony;
- However, the McGraths are the only unit owners who engage in the practice of grilling on a front balcony.

May 23, 2024 Op. & Ord., pp. 6–10, ECF No. 87.

The Association is correct in that the Court has already concluded that the foregoing

evidence failed to establish: (1) a prima facia case for a disability discrimination claim as defined

by a failure to accommodate (Count I); (2) a proper basis for a claim under 42 U.S.C. § 3604(b)

or a prima facia case for familial status discrimination if based on such (Count II); and (3) a claim for retaliation (Count III). The Court also agrees with the Association that the evidence demonstrates that the McGraths' claims in Counts I, II, and III were frivolous, unreasonable, or groundless because they were not supported prior to their complaint being filed for the reasons set forth below. The Court considers each count in turn.

     a.     Count I

First, for Count I (disability discrimination based on a failure to accommodate claim), the Court concludes that it was not reasonable at the outset of this litigation for the McGraths to believe that the prohibitions of the FHA based on a failure to accommodate applied to their situation. This is because the record before the McGraths filed the instant lawsuit shows that the problems that the proposed balcony extension addressed—including that the McGraths had an unreliable second exit, wear and tear on the hallway, lack of space for grilling, entrapment in the unit if their primary exit was blocked, and no second exit to leisurely leave their unit—were all known to the McGraths and should have been understood to have applied to anyone living in their condominium at the outset. *See Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 562 (7th Cir. 2003) (concluding that the plaintiff's "reasoning [was] too attenuated" because "[c]utting off water prevents *anyone* from living in a dwelling, not just handicapped people, and therefore the prohibitions found in the [FHA] . . . do not apply to [the] case." (emphasis added)).

Against this conclusion, the McGraths contend the following establish that Tim and Martin McGrath's autism created the need for the proposed balcony extension: (1) the testimony of Michael and Jill McGrath; (2) the opinions of Erik Emmick, Laura Hartwell, and Katie Kusnik—"who treated and worked with Tim and Marty over the years"; (3) "unrebutted evidence that their purported secondary egress was unreliable because it is controlled by their

neighbor who keeps the gate locked, or places a lock on the gate in a manner which gives the appearance that the gate is locked"; and (4) "due to the severity of Tim and Martin's autism, they do not function well under duress and have difficulty with locks and latches and could not reliably use the purported secondary egress in case of an emergency, such as a fire." Pl. Ass'n Att'y Fee Resp. 4. However, each was rejected at summary judgment. *See* May 23, 2024 Op. & Ord., pp. 3–5, 14–16.

According to the McGraths, the Court's ruling on summary judgment that the opinions of Erik Emmick, Laura Hartwell, and Katie Kusnik were inadmissible was based on "technical objections," which "do not render the claim frivolous or vexatious." Pl. Resp. 4–5 (citing *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 238 (1st Cir. 2010); *Figures v. Bd. of Pub. Utilities of City of Kansas City*, 967 F.2d 357, 362 (10th Cir. 1992)). Nevertheless, the McGraths do not develop this conclusory argument or provide any analysis with reference to the cited cases. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."). Even if they had, the Court disagrees based on the McGraths' communication with the Association in 2018 on their reasons for the balcony extension, the timing and substance of the opinions of Emmick, Hartwell, and Kusnik, and the record at the time that the McGraths made their request in 2018.

There is no indication that the McGraths told the Association that Tim and Martin's not functioning well under duress or difficulty with locks and latches were reasons for the proposed balcony extension when they made the request in 2018. Pl. Ex. 41, ECF No. 77-42; Def. Ex. 2, Ex. 8, p. 103 of 116, ECF No. 72-3. Also, as highlighted by the Association, the McGraths did not obtain the opinions of Emmick, Hartwell, and Kusnik until the year 2022, years after they made the request to the Association in 2018. Pl. Ex. 9, ECF No. 77-10; Pl. Ex. 10, p. 1, ECF No. 77-11; Pl. Ex. 11, ECF No. 77-12; Pl. Ex. 12, p. 1, ECF No. 77-12; Pl. Ex. 23, ECF No. 77-24.

Additionally, the McGraths do not explain how the opinions of Emmick, Hartwell, and Kusnik establish causation; and the Court has reviewed the letters and testimony of Emmick and Hartwell and the declaration of Kusnik and found no explanation about how the proposed balcony extension directly addresses the problems of not functioning well under duress or difficulty with locks and latches. Presumably, the proposed balcony extension would have to be accessed by a door containing a lock or a latch, and the front door of the McGraths' condominium already contains a lock and latch—which Jill McGrath testified that Tim and Martin McGrath use regularly without indicating that the front door has an accommodation that addresses any issue with locks and latches. *See* Pl. Ex. 2, 99:1–13, ECF No. 77-3.

Instead, the record from the time that the McGraths made their request to the Association for the proposed balcony extension in 2018 shows the following. The proposed balcony extension to the McGraths' condominium provided an egress/ingress and more space, and any issues with egress/ingress or space affected anyone living there not only those with a disability. Also, although there is no dispute that Tim and Martin have a disability, there is no indication that any problem connected to their disability resulted in a need for more space than was already available in their condominium. And, Tim and Martin already had an egress/ingress at the condominium. As these facts would have all been known to the McGraths when they made the request for the proposed balcony extension in 2018, the McGraths' failure to accommodate claim was unreasonable from the outset. *See Good Shepherd Manor Found., Inc.*, 323 F.3d at 562.

      b.      Count II

Second, for Count II (familial status discrimination claim), the McGraths say that it "is based on a theory of disability-based discrimination" discussing the allegations in their second amended complaint where the claim originated. Pl. Ass'n Att'y Fee Resp. 5. In Count II, the McGraths allege that

the change of position of the unit owners who previously voiced their support of the McGrath's request for a reasonable accommodation, but subsequently changed their position and voted against the McGrath's request for a reasonable accommodation, was based upon those Association members discriminatory animus against the McGrath familial status, specifically the disabled individuals in the McGrath family.

Second Am. Compl. ¶ 73; Third Am. Compl. ¶¶ 73. Thus, Paragraph 73 alleges a claim for discrimination based on familial status. *See* Second Am. Compl. ¶ 73; Third Am. Compl. ¶ 73.

As set forth in the Court's summary judgment ruling, the plain language of § 3604(b) does not provide a remedy for familial status discrimination based on a family with disabled adults. Instead, a familial status discrimination claim is based on the presence of minor children under the age of 18 living in the household. Thus, the Court concludes, as argued by the Association, that the McGraths' Count II claim for disability-based discrimination based on familial status was groundless from the outset.

Nevertheless, the McGraths appear to argue that the Court should reconsider its summary judgment ruling by construing their Count II discrimination claim as a claim for disability discrimination under 42 U.S.C. § 3604(f)(2) instead of as a claim for familial status discrimination under 42 U.S.C. § 3604(b). This issue is not properly before the Court because it was raised in a response to a motion for attorneys' fees rather than in a motion for reconsideration. Nevertheless, the Court will consider whether the evidence that the McGraths point to in their response brief shows that it was reasonable at the time they filed their second amended complaint for them to believe that they could gather evidence showing that the reason the Association members changed their vote was because of an animus for the McGrath family based on the disability of Tim and Martin. The Court concludes that such a belief was not reasonable.

This is because the McGraths' theory of disability discrimination hinges on the vote-changing Association members developing an animus for the McGrath family based on Tim and Martin's autism sometime between their first vote, which appears to have been in 2013, and their second vote in 2018. But instead of pointing to circumstantial evidence supporting such a development, the McGraths say there is circumstantial evidence for disability discrimination: (1) all other Dunecrest Condominium units have at least two safe exits made by exterior modifications most of which the seven other Dunecrest Condominium owners constructed without Association approval; (2) the McGraths did not expect resistance in getting approval because their proposed balcony extension is unobtrusive; (3) the Association attempted to change the rules to make approvals for exterior modifications more difficult after the other seven owners completed their modifications and the McGraths had made their request; (4) in 2018, the Association called a special meeting to discuss the McGraths' proposal despite there being no resistance to the previous seven modifications, which became heated with shouting, screaming, and door slamming; (5) Moran voted in favor of the McGraths' proposed balcony at the meeting but sent an email the following day stating she was changing her vote with no explanation as to why, which is a type of vote change that had never occurred before; and (6) the only difference between the McGraths and the other Association members is that they have two family members, Tim and Martin, who are autistic.

Assuming for the sole purpose of this analysis that the McGraths had established this evidence on summary judgment, the Court finds that there is no basis to support a reasonable belief by the McGraths that they could gather evidence showing that the Association members changed their vote because of an animus for the McGrath family based on Tim and Martin's autism. There could be a reasonable basis for such a belief if, for example, the evidence that the McGraths pointed to was paired with evidence indicating that the Association members who

changed their second vote did not know about Tim and Martin's autism or disability at the time of the first vote or that Tim and Martin had not yet been diagnosed at the time of the first vote; but the McGraths do not point to evidence indicating such and the record shows that Tim and Martin had been diagnosed well before the McGraths moved into the condominium.

c.      Count III

Third, for Count III (retaliation claim), contrary to the McGraths' assertion regarding the summary judgment ruling, the Court applied the following standard: "the McGraths must 'point to . . . conduct that a person of normal fortitude would view as coercive, intimidating, threatening, or interfering with the exercise of [their] protected right under the FHA.'" May 23, 2024 Op. & Ord., p. 24 (quoting *Geraci v. Union Square Condo. Ass'n*, 891 F.3d 274, 277 (7th Cir. 2018)). Because the record for the time up to the McGraths filing the Third Amended Complaint indicates that the three emails from the Association that they relied on for the claim— i.e. informing them about a lien being placed if they did not pay the special assessment that was owed, asking them to remove outside anchors and bolts and repair their garage door opener, and attaching a report about prohibitions on grilling—were each without any further action taken by the Association against them after sending those three emails, it was not reasonable for the McGraths to believe that they could gather evidence that would establish that the three emails would "'coerce, intimidate, threaten, or interfere with' a person of reasonable fortitude." *Geraci*, 891 F.3d at 277. Thus, when viewing the record as it appeared before the McGraths filed the Third Amended Complaint, the Court concludes that the retaliation claim was unreasonable from the outset.[2]

---

[2] The McGraths make additional arguments on the Association (1) conceding that the McGraths stated a claim for retaliation in its response to the McGraths' motion for leave to amend; (2) filing an Answer to the McGraths' retaliation claim instead of a motion to dismiss; and (3) not responding to the McGraths' offer to mediate before they filed their complaint. However, they cite no pertinent legal authority for any

The Court also finds that the litigation activities in this case do not undermine the Association's argument of frivolousness or groundlessness. The McGraths argue that "the scope and depth of Defendant's summary judgment filings themselves evidence the fact that Plaintiffs' claims were not frivolous or groundless." Pl. Ass'n Att'y Fee Resp. 10. In support, they cite *Apuri*, 2020 WL 401886, at *6, for the proposition that the Association's litigation activities in this case undermine its argument of frivolousness or groundlessness. However, although the *Anpuri* court found that the litigation activities in *that* case undermined the defendant's frivolousness argument, the court had also first concluded that the plaintiff's employment discrimination claim was not "frivolous, unreasonable, or groundless" based on what the plaintiff reasonably believed about obtaining evidence of his performance, comparators, and discrimination, at the time his complaint was filed. 2020 WL 401886, at *6. Unlike in *Apuri*, here the Court concludes that the McGraths did not have a reasonable belief that they could obtain evidence on their claims from the outset, based on the Court's analysis above; and as argued by the Association in its reply, the Association's litigation activities in this case were the result of having to address the claims and filings on those claims that were unsupported from the outset. Thus, the reasoning in *Apuri* is inapplicable.

To the extent that the McGraths raise additional arguments against a finding of attorneys' fees for the Association that the Court has not yet addressed, none are persuasive. First, the McGraths argue that "the fact that Judge Springmann ultimately ruled against Plaintiffs and granted the Defendant's summary judgment motion is itself insufficient to support a claim for the award of attorney's fees." Pl. Ass'n Att'y Fee Resp. 9. However, the Association did not assert

---

of these being a basis for denying attorneys' fees when, as here, a defendant won its motion for summary judgment and the plaintiffs' claims were frivolous, unreasonable, or groundless from the outset. Thus, the Court finds these arguments unpersuasive.

that the Court's granting of its summary judgment motion alone justified the award of attorneys' fees. Instead, the Association's justification was that it was the prevailing party on its summary judgment motion *and* that the evidence demonstrates that the McGraths' claims were not supported prior to their complaint being filed in this case.

Next, the McGraths contend that "the bases for this Court's grant of summary judgment included arguments that Defendant never advanced at any point in the litigation," saying "the Court determined that the Plaintiffs' intentional discrimination claim could not proceed because Tim and Martin McGrath were over the age of 18." Pl. Ass'n Att'y Fee Resp. 10. However, this is an inaccurate characterization of the Court's summary judgment ruling and the arguments advanced by the Association, as the McGraths included a claim for familial status discrimination in their Second and Third Amended Complaint and their response to the Association's motion for summary judgment. *See* May 23, 2024 Op. & Ord., pp. 16–18; Pl. Summ. J. Resp. 6, ECF No. 77. Familial status discrimination is defined under the FHA as discrimination based on a family with minors under the age of 18 living in the household, as set forth above, not on the discrimination of a family with disabled adults.

Then the McGraths argue that "[t]he instant case bears no resemblance to *Clark v. Oakhill Condo. Ass'n, Inc.*, No. 3:08-CV-283 RM, 2011 WL 1296719, at *1 (N.D. Ind. Mar. 31, 2011), the primary case upon which Defendant relies." Pl. Ass'n Att'y Fee Resp. 11. However, the Association only cited *Clark* for the applicable legal standard. *See* Ass'n Att'y Fee Mot. ¶ 5.

The McGraths additionally state:

> It is also well established that "[i]f prevailing defendants were routinely awarded attorney's fees under § 1988, civil rights plaintiffs would be extremely reluctant to initiate litigation for fear of being charged with a fee award vastly exceeding the expected recovery, and in some cases their ability to pay, thereby vitiating the underlying purpose of § 1988." *Coates v. Bechtel*, 811 F.2d 1045, 1049 (7th Cir. 1987), citing *Vandenplas v. City of Muskego*, 797 F.2d 425, 429, 432 (7th Cir. 1986). In *Hershinow v. Bonamarte*, 772 F.2d 394 (7th Cir. 1985), the Court

27

> emphasized the chilling effect large awards would have on plaintiffs, stating "courts must recognize both the substantial risks inhering in most litigation and the danger of post hoc rationalization in agreeing to award attorney's fees to defendants." *Id.* at 395.

Pl. Ass'n Att'y Resp. 13. However, the McGraths do not develop an argument that corresponds with this statement of law.

Accordingly, the Court concludes that the McGraths' claims were frivolous, unreasonable, or groundless when viewing the record as it appeared before the McGraths filed their Complaints. *See Munson v. Friske*, 754 F.2d 683, 697 (7th Cir. 1985) ("On the basis of the thorough record and detailed analysis by the district court in this case, we find that the district court did not abuse its discretion in awarding attorneys' fees to the prevailing defendants.").[3] Thus, the Association is entitled to attorneys' fees under 42 U.S.C. § 3613(c)(2).

2.    *Amount of Attorneys' Fees*

Because the Court has concluded that the McGraths claims in Counts I, II, and III were frivolous, unreasonable, or groundless, the Court must decide whether the Association's fee request is reasonable, which requires calculation of the lodestar amount. *See Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003); *Munson*, 754 F.2d at 697 ("In addition to determining whether to grant an award of attorney's fees to a prevailing party, the district court must also exercise its discretion in setting the amount of the fees awarded."). "Ordinarily a reasonable fee is calculated under the lodestar method by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation." *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018) (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011)); *see also Owens v. Howe*, 365 F. Supp. 2d 942, 946–47 (N.D. Ind.

---

[3] Thus, the Court need not address the Association's argument raised in its reply that the McGraths pursued the instant litigation for vexatious and harassing reasons.

2005) ("The starting point for determining a reasonable fee is the lodestar, that is, the number of hours reasonably expended on the litigation multiplied by the attorney's reasonable hourly rate." (citing *Riter v. Moss & Bloomberg, Ltd.*, No 96 C 2001, 2000 WL 1433867, at *2 (N.D. Ill. Sept. 26, 2000))). "[T]he lodestar yields a presumptively reasonable rate;" however, the Court must consider whether the factors of the particular case warrant such an award. *World Outreach Conf. Ctr. v. City of Chicago*, 896 F.3d 779, 783 (7th Cir. 2018) (quoting *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014)); *see also Thorncreek Apartments III, LLC*, 886 F.3d at 638 ("[T]he lodestar figure is just the 'starting point.'" (quoting *Estate of Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009))). "[S]ince the district court is in a better position to evaluate such a fact-based issue," it is afforded a high level of deference when using the lodestar method to calculate a reasonable attorney fee. *Mathur*, 317 F.3d at 742 (citing *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 551 (7th Cir. 1999); *Bankston v. Illinois*, 60 F.3d 1249, 1255 (7th Cir. 1995)).

When considering the number of hours reasonably expended on the litigation, the district court should consider "the time and labor required, the novelty and difficulty of the issues, the legal skill required, the reputation of the attorneys, the time burdens imposed by the client or the circumstances, and awards in similar cases." *Owens*, 365 F. Supp. 2d at 947 (citing *Riter*, 2000 WL 1433867, at *2); *see Hensley*, 461 U.S. at 430 n.3. The "reasonable hourly rate should reflect the attorney's market rate, defined as 'the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'" *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) (quoting *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999)). It is fair for a court to presume that the attorney's actual billing rate for comparable work is appropriate to use as the market rate. *Owens*, 365 F. Supp. 2d at 947.

In the instant case, the Association has provided statements in the Motion [ECF No. 91] made under penalty of perjury by the Association's attorney Charles F.G. Parkinson, which contain the facts and details necessary for the Court to conduct a lodestar analysis.

The Motion indicates that a total of 346.25 attorney hours were expended by the Association's counsel during this litigation. Ass'n Att'y Fees Mot. ¶ 22, ECF No. 91; Ass'n Ex. A, ECF No. 91-1. The Court has reviewed the time entries submitted by the Association and notes that the McGraths have not objected to the Association's submissions. When determining whether 346.25 hours is reasonable, the Court first considers the factors detailed above. The Court concludes that it is reasonable that the Association expended 346.25 attorney hours when considering the number of complaints filed in this case, the motion to dismiss filed by the Association, the response and sur-reply to the McGraths' motion for leave to amend their first amended complaint filed by the Association, the two motions for summary judgment filed by the Association, the number of exhibits the McGraths filed in their responses to the Association's two summary judgment motions, the number of the Association's objections to the McGraths' evidence, the 118 additional material facts the McGraths included in their response to the first motion for summary judgment, the 164 additional material facts that the McGraths included with the second motion for summary judgment, the number and length of the depositions, and the time involved with addressing all of the irrelevant and inadmissible material submitted by the McGraths.

The Motion also includes information concerning the usual rates charged by each of the attorneys that the Association's counsel utilized throughout this litigation. The terms of the agreement between the Association and their attorneys, Charles F.G. Parkinson, Julie A. Paulson, and Connor H. Nolan, identify the hourly rate for the engagement as $250 per hour. Ass'n Att'y Fees Mot. ¶¶ 15, ECF No. 91. This is the same rate that the law firm of Mr. Parkinson, Ms.

Paulson, and Mr. Nolan charges institutional clients, such as non-profits and municipalities. *Id*. As this rate is the attorneys' actual billing rate for similar litigation services, it is presumed that the rate is reasonable. *See Pickett*, 664 F.3d at 640 (citing *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). This presumption is supported by another ruling in this case, cited in the Motion, where Individual Defendants' attorney Nick Otis' rate of $250 an hour was deemed reasonable by the Court. *See* Ass'n Att'y Fees Mot. ¶ 21 (citing ECF No. 86, p. 4). Additionally, this rate is reasonable because the Plaintiffs do not oppose the dollar amount of attorneys' fees requested by the Association.

The Motion represents that, based on the above figures, the lodestar amount is $86,562.50. *Id*., p. 8; Ass'n Def. Ex. A, ECF No. 91-1. By considering the lodestar calculation, the factors discussed above, and the absence of any objection to the dollar amount by the McGraths, the Court concludes that $86,562.50 is a reasonable fee.

## B.    Defendants Candella, Palonis, Hernandez, and Moran's Motion for Attorney's Fees

The Individual Defendants Candella, Palonis, Hernandez, and Moran filed their motion requesting $7,879.50 in attorney's fees under 42 U.S.C. § 3613(c)(2) because they prevailed when the Court sua sponte granted summary judgment in their favor and against the McGraths. In response, the McGraths argue that the Court should deny the motion as untimely because the Clerk of Court entered final judgment on May 23, 2024, and the Individual Defendants filed the motion for attorney's fees on June 17, 2024, which exceeded the deadline of fourteen days after the entry of final judgment provided for in Federal Rule of Procedure 54(d)(2)(B). The McGraths also highlight that the Individual Defendants did not file a motion for an extension of time to file their motion. In reply, the Individual Defendants say that the Rule 54(d)(2)(B) fourteen day filing deadline does not apply to a motion for attorney's fee such as theirs when the attorney's fees are

damages, citing 42 U.S.C. § 3613. The Court agrees with the McGraths for the reasons set forth below.

Indeed, pursuant to Federal Rule of Civil Procedure 54(d)(2)(B), a motion for attorney's fees must "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B). In this case, the Individual Defendants filed their motion for attorney's fees on June 17, 2024, which was more than fourteen days after the date that the Clerk of Court entered final judgment on May 23, 2024. Also, the Individual Defendants did not file a motion for an extension of time to file their motion for attorney's fees. Notably, the Individual Defendants make no offer of "excusable neglect" as Federal Rule of Civil Procedure 6(b)(1)(B) requires for an extension after a deadline has passed. Fed. R. Civ. P. 6(b)(1)(B). Thus, the Court concludes that the Individual Defendants' motion for attorney's fees was untimely.

To the extent that the Individual Defendants argue that the deadline in Rule 54(d)(2)(B) is inapplicable because their attorney's fees are damages under 42 U.S.C. § 3613, "[w]here the obtaining of attorneys' fees is expressly provided for by statute, a request for attorneys' fees is not a request for 'damages.'" *United States v. Sec. Mgmt. Co*., 96 F.3d 260, 269–70 (7th Cir. 1996). As "under the Fair Housing Act, attorneys' fees and costs are separate classes of statutory remedies," they are "in addition to—and thereby separate from—an aggrieved party's right to damages." *Id*. at 270 (7th Cir. 1996) (citing *Sch. Dist. of Shorewood v. Wausau Ins. Cos.*, 488 N.W. 2d 82, 92–93 (Wis. 1992)); *see Travelers Prop. Cas. Co. of Am. v. Cannon & Dunphy, S.C.*, No. 13-C-877, 2014 WL 12663385, at *3 (E.D. Wis. Nov. 14, 2014) ("The Seventh Circuit, relying on *Shorewood*, found that an award of attorneys' fees under the Fair Housing Act was not 'damages.'" (citing *Sec. Mgmt. Co., Inc.*, 96 F.3d at 270)). And, under the FHA, the Individual Defendants here are not an aggrieved party to whom damages are being awarded. *See* 42 U.S.C. § 3613(c)(1) ("[I]f the court finds that a discriminatory housing practice has occurred

or is about to occur, the court may award to the plaintiff actual and punitive damages."). Thus, the Court finds the Individual Defendants' "damages" argument unavailing.

Accordingly, the Court denies the Individual Defendants motion for attorney's fees because it was untimely under Rule 54(d)(2)(B).[4] Thus, the Court need not address the parties' additional arguments on whether the instant litigation was frivolous, vexatious, or brought to embarrass the Individual Defendants or on the reasonableness of the attorney's fees.

## CONCLUSION

For the reasons stated above, the Court hereby GRANTS the Defendant Dunecrest Condominium Association's Verified Motion for Attorney's Fees [ECF No. 91]. The Court ORDERS the Plaintiffs to pay the Defendant Dunecrest Condominium Association's attorneys' fees in the amount of $86,562.50. The Court DENIES Holly Candella, Ruth Palonis, Michael Hernandez, and Janet Moran's Verified Motion for Attorney's Fees [ECF No. 93].

SO ORDERED on March 26, 2025.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

[4] Although the Individual Defendants also say that the McGraths would not have been prejudiced by the untimely filing of the motion, they do not cite any pertinent legal authority for the proposition that a court has the discretion to extend a deadline for a motion for attorney's fees when the plaintiff would not have been prejudiced by the extension; thus, the Court need not address the Individual Defendants' statement on prejudice. *See Mahaffey*, 588 F.3d at 1146.